RANTA v. NEWPORT MINING CO.

1. MINES AND MINING — NEGLIGENCE — EVIDENCE — EXPERT TESTIMONY—WITNESSES.

On the trial of an action for injuries sustained in the mine of defendant by the giving way of certain timbers supporting a "raise," the opinion of a miner who had been in that line of employment for ten years and upwards and

was familiar with the work of constructing raises, that
certain timbering was usually done in a way which he
described, was properly received in evidence and defend-
ant's objection that he was not qualified to testify to the
custom was correctly overruled, defendant not cross-
examining the witness and attempting to raise the point
by a general objection and where defendant's captain and
foreman testified to similar facts. OSTRANDER, J., dissent-
ing.

2. SAME—EVIDENCE.

Another witness who gave expert evidence as to the proper
method of timbering was also correctly allowed to testify
where he had been a miner for a long period and had
seen the method of doing similar work and had practical
experience.

3. SAME — EVIDENCE — MORTALITY TABLES — PERMANENCY OF IN-
JURIES.

Evidence that plaintiff's leg was broken and became short-
ened as a result of injuries sustained in a mine, that he
suffered other serious injuries, that some of them would
be permanent to some extent, authorized the admission
in evidence of the mortality tables; and it was sufficient
to sustain a charge and verdict for future pain and loss
of earning power and for future expenses.[1]

4. TRIAL—CHARGE—CLAIMS.

It was also proper for the court to state to the jury the
claim of the plaintiff whose testimony supported the in-
structions.

5. SAME—SAFE PLACE—ASSUMED RISK.

The doctrine that it was the master's obligation to furnish
a safe place, applied to the insufficient or defective con-
struction of a raise in defendant's mine, which was not
securely timbered or supported and gave way injuring
the employee: the duty could not be delegated and as the
evidence tended to show that plaintiff had no warning
or knowledge of the danger he could not be held to have
assumed the risk of the alleged negligence.[2]

[1] On the question of mortality tables as evidence, see note in
40 L. R. A. 553.
[2] As to servant's assumption of risk in attempting dangerous
work in obedience to orders, without fully appreciating the
danger, see note in 4 L. R. A. (N. S.) 838.

Error to Gogebic; Cooper, J. Submitted January 22, 1914. (Docket No. 65.) Decided June 1, 1914.

Case by Victor Ranta against the Newport Mining Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*C. W. Westerman (James G. Flanders, of counsel),* for appellant.

*O'Brien & Le Gendre* and *George O. Driscoll,* for appellee.

KUHN, J. The defendant operates an iron mine at Ironwood, Mich., with the customary shafts, drifts, levels, sublevels, chutes and raises. From one of the main drifts, or levels, known as the fifteenth level, a perpendicular shaft, or raise, had been constructed, reaching upward to a drift 47 feet above, which was known as the forty-seventh sublevel. Mining operations were going on in this sublevel, and the raise in question had been constructed as a chute through which ore was dropped to the level below. It was divided by a partition into two perpendicular compartments, and, when the ore clogged in one of these compartments, a workman might be let down into the other to loosen the ore by pounding on the partition between.

At the time of the accident, the plaintiff, who had worked in mining operations for about two years, was employed as a marker on the top of this raise on the forty-seventh sublevel. It was his duty to mark how much ore the miners brought in and help the trammers turn the car on the turntable, keep the table free of dirt, and open the door of the car. He had been at this work one day, and was told by the shift boss to continue the work on the second day. The chute became clogged, and it is the claim of the plaintiff that the shift boss ordered him to go down the chute and loosen the ore, and that a rope was tied

around his body and he was lowered down the larger side of the raise; that he was given a four or five pound hammer with which he was instructed to pound upon the dividers; that he had never done this work before; that no warning of the danger was given him; and that, while engaged in this work and suspended about ten feet from the bottom of the raise, the clogged ore started to run in the opposite compartment, and some of the dividers near the middle of the ore chute broke through, and ore, together with some of the dividers, fell, through the opening thus made, upon the plaintiff and caused the injuries of which he complains, and for which the jury awarded him damages in the sum of $5,000.

One of the grounds of negligence which were submitted to the jury was the claimed defective construction of the raise in question. Plaintiff's declaration describes the construction as it was, and as it is claimed it should have been, as follows:

"That said raise was of great size, to wit, 4 feet wide by 7 feet in length on the inside, and extending, to wit, from said fifteenth level, a distance of, to wit, 50 feet, upward to a certain sublevel therein, and was made and constructed by making an excavation or hole upwards from, to wit, said fifteenth level, and placing timbering, called cribbing, inside of said hole, to wit, 8 feet in length lengthwise, and 4 feet, in length crosswise, which cribbing was and is from 6 to 12 inches in diameter, and for the purpose of dividing said raise into two compartments, or holes, the defendant undertook to make a dividing or partition wall within the rectangular space formed by the inside of said cribbing, so constructed therein, as aforesaid. That defendant constructed said partition or dividing wall in said raise in the following manner, to wit: By nailing or spiking cleats of, to wit, two pieces of plank and lagging, about 4 or 5 inches apart, upward and downward on the inside of the timber or cribbing in said raise, and on opposite sides thereof, and then placing across said raise, so that the ends thereof would come within the said 4 or 5 inch space

between said cleats of plank and lagging, certain lagging, to wit, cedar and other lagging, from the top to the bottom of said raise, and in this manner: Divided said inside space into two holes or compartments—and at the top of said raise, to wit, on said sublevel, defendant so built, constructed, and arranged tracks, platforms, and turntables that cars used for transporting or tramming ore in said mine could be conveyed to, and their contents dumped in, said raise, and so built and constructed an opening at the bottom of said raise, known in mining parlance as a 'chute,' that ore dumped in said raise, in said sublevel, could be taken, therefrom through said chute at the bottom thereof. That, in the use of such raises in like mines as said Newport mine, ore is at times dumped therein in such quantities as to fill, or partially fill, such raises, and at times such ore becomes clogged therein at divers points above the bottom thereof, while that part near the bottom thereof runs, and is taken out, through the chute at the bottom thereof, and there remains in the bottom of such raise a vacant space in one of the chambers of such raises, and it becomes necessary in order to loosen such ore, so clogged, as aforesaid, and to cause it to pass through such raise, for some person to descend into one hole or chamber of such raise and loosen such clogged ore and matter in the opposite chamber by striking upon the dividing or partition wall, producing a vibration, and thereby loosening and liberating the ore and matter in the opposite chamber, and causing it to fall to the bottom thereof, so that it can be taken therefrom through the chute therein; and that the work and operation of so descending into such chute and loosening and liberating such clogged ore is of an unusual and exceptional nature, and highly dangerous and perilous to the person performing the same, and great skill and experience is required in such person in order that he may escape injury while so doing. That the proper and safe way to build and construct such raises, and to place such partitions or dividing walls therein, is to build and construct the outside wall of such raise with good, strong, sound, and heavy timber, and to place crosspieces of like timber, securely set and placed into notches, grooves, or pockets made on the inside of such outside timbers, at distances of from 3 to 4 feet

apart, and then to strongly and securely spike strong, sound, and heavy timber upward and downward at right angles with such crosspieces, on the side (or sides) of such raise, which is to be used as an ore compartment therein, but the plan and manner under which said 15 raise was constructed was and is of an unsafe, insecure, and dangerous kind and character, and it was and is extraordinarily dangerous and hazardous for any person (and especially an unskilled person) to descend therein and perform the work and operation of loosening and dislodging ore, as aforesaid, and such operation in such raise as said 15 raise was and is of a much more highly dangerous, perilous, and hazardous nature than to perform a like operation in a raise properly built, as aforesaid; and the timbers (both outside timbers and cross timbers) in said 15 raise were not of a sound, strong, secure, and proper kind, or of sufficient size and strength for use in such a raise, being, to wit, too small, weak, rotten, unsound, defective, and unrealiable for such use, which greatly increased such danger to such person so descending therein—all of which was at and at all times prior to the time of the occurrence of said injuries well known to the defendant, but unknown to the plaintiff, as the defendant well knew, or should have known."

Counsel for appellant has grouped the legal questions raised by proper assignments of error as follows:

(1) Admission of expert testimony relative to the method of constructing raises.

(2) The admission in evidence of the table of mortality.

(3) Instructions in reference to future suffering, future expenses, and future loss of time and earnings.

(4) Excessiveness of verdict.

(5) Improper assumption in the judge's charge of a fact which is contradicted by the testimony and the pleadings.

(6) Verdict contrary to evidence.

(7) Question of fellow-servants and safe place to work.

The first question relates to the qualifications of

witnesses Kilponen and Koski to testify as experts as to the proper construction of raises in mines. Kilponen had worked as a miner for oven ten years, and his work had been building raises. He illustrated how the raise should be properly constructed by drawing a diagram on a blackboard. No question was asked him on cross-examination as to his qualifications, and the objection chiefly urged against his testimony is that he was allowed to testify as follows:

"*Q.* Have dividers been customarily put in in that way for the past six years in this vicinity, with the joggle in?

"*Mr. Norris:* That is objected to as incompetent, irrelevant, and immaterial and not a subject of expert testimony.

"*Mr. Driscoll:* I think he can testify as to the custom.

"*The Court:* Take the answer.

"*Mr. Norris:* Exception.

"*The Witness: A.* Yes, in all the mines; in all the Oliver Company mines. The reason that the joggles are put in that way is because it makes it more solid and strong and won't slip off."

No suggestion was made in the objection of counsel that witness had not sufficient knowledge of the custom to answer the question. The question called for competent, relevant, and material testimony, and no error was committed in permitting the answer. He further testified:

"It is necessary to have them strong and solid because lots of fellows have to be around there. Pipes run through, and there are pipe gang men. They have to be strong so that nobody won't get hurt.

"*Q.* How would they get hurt if they were not strong?

"*A.* If the raise gets blocked up with ore and then loosened, its heavy weight will break it or push them out, if the chute is blocked up.

"*Q.* What I want to know is whether it will do that with a chute that is properly built?

*"Mr. Norris:* The last objection is renewed.
*"The Court:* Answer the question.
*"Mr. Norris:* Exception.
*"The Witness: A.* No, sir; it won't if it is correctly built. Where dry, soft ore is being run through a raise, and the raise has not been used to exceed about a month, the timbers would not rot within that time."

We cannot see how allowing the answers was prejudicial to the defendant, as both the defendant's mine captain and shift boss testified that, in order to withstand the strain, it was necessary to have the dividers strong and of proper length and firmly set against the opposite sides of the raise.

The witness Koski testified that he had worked in at least five different mines in the vicinity of defendant's mine; that he had built and helped build raises, but not before 1909; that he knew how raises were customarily built before that time, as he had been going through such raises three or four years before and had examined them to see how they were built. The testimony which gave rise to the objection was as follows:

*"Mr. Driscoll: Q.* Do you know how raises were built in 1909 and prior thereto?

*"A.* I have not been building them myself, but I have seen.

*"Q.* Then do you know how they were built?

*"A.* I saw it that they were built the same way as—

*"Mr. Norris:* Wait a minute; I object to that, if the court please. That question only calls for yes or no.

*"The Witness: A.* Yes.

*"Mr. Driscoll: Q.* Now, I ask you how they were built at that time?

*"Mr. Norris:* I object to that, if the court please, because the only evidence of this man himself as to his observation is simply that he went through them.

*"The Court:* You may take the answer."

The witness thereupon made a drawing on the blackboard and described the construction.

"*Q.* Why are joggles put in those dividers?

"*Mr. Norris:* I object to that because he has not shown himself competent to testify as to those things in 1909 or prior thereto.

"*The Court:* Take the answer.

"*Mr. Norris:* Exception.

"*The Witness: A.* Because it is more solid and stronger."

Both Kilponen and Koski qualified themselves to the satisfaction of the trial judge to testify as to this construction, and, as both of these witnesses were miners of practical experience, we are of the opinion that no prejudicial error was committed in allowing the questions and answers objected to. 17 Cyc. p. 239; *Bettys* v. *Denver Township,* 115 Mich. 228 (73 N. W. 138).

The objection to the admission of the mortality tables is based on the claim that there was no evidence to show permanent disability. At the time of the accident, plaintiff was 23 years of age, sound physically, and in good health. As a result of the accident, his right leg was broken, there has been a shortening of about three-quarters of an inch, and also a limitation in the movement of his knee joint, which the physician testified will be permanent to some extent. Plaintiff also claimed that his face was swollen, his lips smashed, so that he could not eat solid food for weeks, and still show a scar about an inch long; that he was in the hospital five months lacking two days; that since the injury he has headaches, stomach and bowel trouble, and suffers pain, not only in the broken limb, but in his side; that he is unable to do hard work, such as mining, and the work that he does is attended with pain. There can be no question from this record that his leg is permanently injured, and it was therefore not error to introduce the mortality tables in evidence. *Haines* v. *Railway Co.,* 129 Mich. 475, 479 (89 N. W. 349).

We are also satisfied that the testimony offered to show the injuries was sufficient to support the in-

structions of the trial judge with reference to future suffering, future expenses, and future loss of time and earnings. *Kuney* v. *Dutcher*, 56 Mich. 308 (22 N. W. 866) ; *Olson* v. *Village of Manistique*, 110 Mich. 656 (68 N. W. 986) ; *Styles* v. *Village of Decatur*, 131 Mich. 443 (91 N. W. 622).

The part of the judge's charge which is criticised as assuming a fact which is contradicted by the testimony and the pleadings is the part in which the court stated to the jury the claim of the plaintiff, which it was proper for the court to do, as the claim stated was supported by evidence. *Schweyer* v. *Jones*, 152 Mich. 241 (115 N. W. 974).

We are also of the opinion that the doctrine of safe place applies in the instant case. The plaintiff had nothing to do with the building, inspecting, or repairing of the raise, and he claims he was ordered to do this work by the shift boss, without any warning of the danger, and that he did not know of any danger. The duty to furnish a safe place was a duty which could not be delegated by the master; nor can it be said that the plaintiff assumed the risk. See *Orso* v. *Engineering Works*, 164 Mich. 568, 571 (129 N. W. 673), and cases therein cited.

The trial judge properly denied the motion for a new trial. We are satisfied that the evidence was sufficient to sustain the verdict and the amount thereof.

Judgment affirmed.

McALVAY, C. J., and BROOKE, STONE, BIRD, MOORE, and STEERE, JJ., concurred with KUHN, J.

OSTRANDER, J. In my opinion the testimony of the witness Kilponen as to the custom of using or putting dividers in Oliver Company mines was incompetent.