## UNION TRUST CO. *v.* PARKER.

1. EVIDENCE—REMOTENESS—CORPORATIONS—GUARANTY.
   Representations made by plaintiff's director more than two years before execution of guaranty sued on, and having no relation thereto, is too remote to have any probative force as evidence of plaintiff's fraud in inducing defendant to enter into said contract of .guaranty.

2. SAME—ADMISSIONS OF SUBORDINATE EMPLOYEE INADMISSIBLE.
   Testimony as to admissions of subordinate employee of plaintiff corporation in relation to payments on automobile paper discounted by it and guaranteed by .defendant was inadmissible in evidence in action on guaranty; said employee not being officer of plaintiff and having no power or authority delegated to him to make admissions binding on· plaintiff.

3. PRINCIPAL AND AGENT—ADMISSIONS OF AGENT—RES GESTÆ.
   Admissions of agents may be proven and enforced against principal when they are part of *res gestæ*.

4. SAME—AGENT'S POWERS.
   Agent has only such power as principal sees fit to give him.

5. CORPORATIONS—WHEN ADMISSIONS OF SUBORDINATE AGENT BINDING.
   Declarations and admissions of subordinate corporate agents are binding upon corporation only when made in connection with particular business intrusted to them, and when such declarations are incidental to duties they are intrusted to perform.

6. TRIAL—INSTRUCTIONS MUST BE BASED ON EVIDENCE.
   Charge of court must be based on evidence.

7. SAME—INCLUSION OF STRICKEN EVIDENCE ERROR.
   Where certain certificate was stricken from record, its inclusion in court's charge to jury was error.

8. SAME—ADMISSIONS—INSTRUCTIONS.
   It was error for trial court to include in charge to jury inadmissible admissions of subordinate employee of plaintiff cor-

poration in reference to statements claimed to have been relied on by defendant in guaranteeing automobile paper discounted by plaintiff.

9. CORPORATIONS—MANAGEMENT VESTED IN DIRECTORS.
   Ordinary management of corporation is vested in board of directors.

10. GUARANTY—CORPORATIONS.
    Director of corporation may not defend action against him on guaranty on ground that paper hypothecated by his company with plaintiff was in violation of trust agreement.

11. SAME—FRAUD.
    Director of corporation may not take advantage of his own neglect of duty and defend action against him on guaranty on ground that his company was guilty of fraud on plaintiff.

Error to Macomb; Reid (Neil E.), J. Submitted June 18, 1930. (Docket No. 123, Calendar No. 34,972.) Decided October 3, 1930.

Assumpsit by Union Trust Company against John Parker on a written guaranty. From verdict and judgment for defendant, plaintiff brings error. Reversed and remanded.

*Campbell, Bulkley & Ledyard* and *Lungerhausen, Weeks, Lungerhausen & Neale* (*Harold R. Smith,* of counsel), for plaintiff.

*Henry C. L. Forler,* for defendant.

POTTER, J. Plaintiff sued defendant on a written guaranty dated November 20, 1926, by which defendant guaranteed the prompt and punctual payment in accordance with their terms, of any and all collateral trust notes not exceeding $20,000 of the Prudential Discount Company, a Michigan corporation, that had been or might thereafter be discounted with the Union Trust Company of Detroit, together

with any and all renewals or extensions of said notes and interest thereon and charges thereunder. The guaranty also contained the language:

"Demand, presentation, protest, notice of protest and diligence in collection are hereby expressly waived by the undersigned,"

The defendant pleaded the general issue and gave notice the written guaranty was obtained by the plaintiff without consideration, defendant had been released from liability thereon, plaintiff had been guilty of fraud in accepting from the Prudential Discount Company notes not in accordance with the trust agreement providing for the delivery of such notes to the Union Trust Company and the certification by it of the collateral trust notes guaranteed by defendant; the contract of guaranty had been fully paid and satisfied and there had been an accord and satisfaction. On trial, a verdict was rendered for defendant and judgment later entered thereon. Plaintiff brings error.

February 28, 1924, Fred J. Horning, the son-in-law of defendant, was doing business in Detroit as Prudential Discount Company. On that date he entered into a written contract with the Union Trust Company to enable him to finance automobile notes and to borrow money thereon. The agreement was that Horning should deposit and pledge these automobile notes with the Union Trust Company, and thereupon he was to make and execute his own notes payable to himself, the Union Trust Company was to certify the Prudential Discount Company had deposited with it as trustee as collateral security for the payment of such collateral trust notes, so called, automobile paper to the par amount of one and one-fifth times the face value thereof. Horning represented and warranted the notes deposited under the trust agreement with the plaintiff were his own

property and he had a right to hypothecate and pledge the same; that said notes represented the unpaid balances of *bona fide* sales of automobiles at fair market prices, of which not less than 33⅓ per cent. had been paid in cash, the payment of the notes being secured by conditional sales contracts, or such notes might evidence loans on automobiles of standard make and amount not to exceed 50 per cent. of the appraised value thereof, which value was to be based upon the resale value of such automobiles as of the date of such loans. He further warranted and represented the notes were covered and protected by insurance in responsible insurance companies, subject to the approval by the trust company, against fire, theft, and embezzlement. He also assigned and made over to the trust company all the right, protection, and indemnity afforded by the conditional sales contracts and the insurance thereon, and all agreements with dealers or others for the protection of all automobile notes pledged and for the resale of automobiles acquired, including any and all credit insurance on such automobile paper. The trust agreement provided:

"Said trust company, may at its option and its discretion, permit said first party to retain possession of the papers evidencing the protection and indemnity above indicated, and handle and administer such protection and indemnity, as its agent nevertheless and in trust for the account and benefit of the trusteeship hereby created."

The trust company was to hold and administer the automobile notes, give notice of the maturity of the paper to the makers thereof, and receive and collect the payments on the notes. The agreement provided that, in case the notes were not paid, they would be surrendered to the Prudential Discount Company and new notes substituted in their place so

the security back of the collateral trust notes was maintained at all times. The cash proceeds of the automobile notes when paid were to be used to retire the collateral trust notes certified by the trust company. The Union Trust Company was to receive not less than $35 a month for carrying out its part of the trust agreement. Attached to the agreement was the form of the promissory notes, guaranty, conditional sales contracts, and assignments to the trust company. The trust agreement provided the trust company assumed no liability as to the correctness of any statement contained in the trust agreement nor as to the validity of the agreement or the lien purported to be created thereby, nor as to the title or value of the automobile notes above described, nor in the taking or carrying of insurance as to the extent, value, validity, or amount of insurance so taken or carried, nor the insurable value of the property insured. It stipulated it might deal in the certified notes issued under such trust agreement with the same rights and immunities as if it were not trustee.

Subsequently Fred J. Horning, doing business as the Prudential Discount Company, assigned his interest in the trust agreement to the Prudential Discount Company, a Michigan corporation, and the Prudential Discount Company, a corporation, in consideration of such assignment, accepted the same and agreed to perform the covenants and conditions in the agreement with the Union Trust Company to be kept and performed by the said Fred J. Horning, doing business as the Prudential Discount Company.

When John Parker entered into agreement with the Union Trust Company, September 15, 1924, more than two years prior to the making of the con-

tract of guaranty sued upon, Mr. Adams, a director of the Union Trust Company, is said to have stated the Union Trust Company issued trust notes for 85 per cent. of the amount of the automobile paper deposited with the Union Trust Company. The contract itself provides:

"Upon pledge and deposit of such automobile notes, said first party may execute his own promissory note or notes for an amount not exceeding $83\frac{1}{3}$ per cent. of such automobile notes, in form substantially as follows:   *   *   *

"It is the purpose and intent hereof that the promissory notes so certified shall at no time and in no event exceed in their aggregate amount at any one time outstanding, $83\frac{1}{3}$ per cent. of the automobile paper in good standing, held by said trust company hereunder."

The certificate attached to the collateral trust notes certified the Prudential Discount Company had deposited and pledged with the Union Trust Company as collateral to the collateral trust notes $1\frac{1}{5}$ times the face value of such collateral trust notes.

This testimony was objected to as being too remote. The question whether it was remote or not does not depend entirely on the time, but this statement made on the part of Mr. Adams was more than two years before the making of the written guaranty sued upon. It had no relation to the written guaranty made by defendant of the paper of the Prudential Discount Company, a corporation, but related to a paper of Fred J. Horning, doing business as the Prudential Discount Company. We think this testimony not so closely connected with the transaction under consideration as to have any probative force as evidence of plaintiff's fraud in inducing defendant to enter into the written guar-

anty of the corporation's paper more than two years afterward.

Defendant testified that before he signed the written guaranty sued upon, dated November 20, 1926, he talked with Walter Timmons in Horning's office in Detroit; that he asked Timmons how they were keeping up the automobile paper, and whether it was being paid, and how everything was going, and Timmons said "first-rate." This testimony was taken under plaintiff's objection. It is claimed Timmons had no authority to make any statements or admissions binding upon plaintiff. Mr. Adams, under whose direct control Mr. Timmons was during his period of employment by the Union Trust Company, testified Timmons had no authority to sign an agreement on behalf of the trust company or to certify the notes or to permit withdrawals of cash or to make any certification or representation in relation to the collateral trust notes. Timmons was not an officer of the Union Trust Company, but a subordinate employee. He had no power or authority delegated to him to make admissions binding upon the plaintiff.

The admissions of agents may be proven and enforced against the principal when they are a part of the *res gestae*. It does not appear that Timmons' admissions or statements fall within the general rule. An agent may have as much or as little power as the principal sees fit to give him. *Kornemann* v. *Monaghan*, 24 Mich. 36. The declarations and admissions of subordinate corporate agents are binding upon a corporation only when made in connection with the particular business intrusted to them, and such declarations must be incidental to the duties they are intrusted to perform. 14A, C. J. p. 478.

"Were the rule otherwise, the fortune of every man would rest on the veracity of his errand boy." *Grover & Baker Sewing Machine Co.* v. *Polhemus,* 34 Mich. 247.

"A party dealing with the agent of a corporation must at his peril ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agent's assumption of authority." *Rice* v. *Peninsular Club,* 52 Mich. 87.

We think the testimony of Timmons was inadmissible.

The certificate of the Union Trust Company pledgee was attached to the collateral trust notes. This certificate was offered in evidence by plaintiff, and defendant testified he never saw it prior to signing the written guaranty sued upon, and did not rely upon it. Upon motion of plaintiff such certificate was stricken from the record. Nevertheless the trial court incorporated this certificate in his charge to the jury. The charge of the court must be based upon the evidence, and the inclusion of this evidence, stricken from the record, in the charge of the court was in violation of plaintiff's rights, and error.

The defendant John Parker testified:

"*Q.* Now, back in 1924 you had confidence in Fred's ability?

"*A.* I did, or I would not have signed his guaranty.

"*Q.* And you had confidence in his ability down to 1926?

"*A.* I did.

"*Q.* You still had that confidence when you signed the second guaranty?

"*A.* I did.

"*Q.* Did you ever ask Fred about his money loaning business?

"*A.* Why, he explained the business to me when I first signed up with him, how it was, and about the

fifteen cents on every dollar as a guarantee on automobile paper; so I signed up with him.

"*Q.* Will you kindly explain again what he told you about what security there was for these certified notes?

"*A.* Well, as they—the security was, if he cashed, if he turned in $100,000 worth of business he would get $85,000 worth of trust notes. They held back fifteen cents on each dollar for security.

"*Q.* When he told you that did you believe him?

"*A.* I did.

"*Q.* And did you continue in that belief down until 1926 when you signed the second guaranty?

"*A.* Yes, sir.

"*Q.* And did you have sufficient confidence in November, 1926, to rely upon what Fred had told you?

"*A.* I did.

"*Q.* And did you rely upon what he told you?

"*A.* I did."

The court charged the jury in relation to the representations claimed to have been made by Mr. Timmons:

"The court views them as material, and I can see no reason for doubting, on the part of the jury, that Mr. Parker in some measure relied upon that. * * *

"I can see no reason for doubting that if it went so far and the jury found that Mr. Timmons was authorized to make the representations, and that he actually made them under the circumstances claimed by Mr. Parker, I can see no reason for the jury doubting that Mr. Parker was damnified by these representations. There is no proof he obtained any information from any other source—if I knew from proof in this case that he obtained any other information from any other source I could not make the charge in that form, but I know of no proof in the case that Mr. Parker obtained that information

from any other source or that he disbelieved the statements made by Mr. Timmons as he claims, if you find Mr. Timmons was authorized to make them and that he actually made them.''

We have already said the testimony of the admissions made by Mr. Timmons was not admissible in evidence. The charge to the jury was based upon this evidence which became the turning point in the case. Under the circumstances, the charge was error.

The important question is not whether there was error, but whether a verdict ought to have been directed in favor of plaintiff.

The Prudential Discount Company was a corporation. At the time the written guaranty was made defendant was a director of that corporation. The ordinary management of a corporation is vested in the board of directors. *Star Line* v. *Van Vliet,* 43 Mich. 364; *Genesee Savings Bank* v. *Mich. Barge Co.,* 52 Mich. 438; *Ten Eyck* v. *Railroad Co.,* 74 Mich. 226 (16 Am. St. Rep. 633, 3 L. R. A. 378); *Garber* v. *Town,* 208 Mich. 1; 2 Thompson on Corporations (3d Ed.), §§ 1165, 1375.

Defendant was a director of the Prudential Discount Company when he signed the guaranty sued upon. He cannot be heard to defend on the ground the paper hypothecated by his company with the Union Trust Company was not in accordance with, but in violation of, the trust agreement. Due attention and diligence on defendant's part to the duties of his office would have obviated the liability now sought to be enforced against him. He cannot take advantage of his own neglect of duty and consequent ignorance of the affairs of the corporation of which he was a director, and defend upon the ground the corporation of which he was a director was guilty

of a fraud upon the Union Trust Company. 2 Thompson on Corporations (3d Ed.), § 1375.

Judgment reversed, with costs, and the case remanded for judgment for plaintiff.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.