PHOENIX ASSURANCE CO., LTD., v. TRIPP.

AUTOMOBILES—RESIDENCE DISTRICT—CONTRIBUTORY NEGLIGENCE.
It was reversible error for trial court to inject issue as to whether or not district in which accident occurred was a residence or business district, where evidence shows no residences or business structures were on street involved within 300 feet of collision, and issue of contributory negligence of defendant, travelling at speed of 40 to 50 miles per hour, was directly affected thereby (CLS 1954, §§ 257.5, 257.51, 257.627).

Appeal from Antrim; Brown (Charles L.), J. Submitted January 10, 1957. (Docket No. 33, Calendar No. 46,918.) Decided February 28, 1957.

---

REFERENCES FOR POINTS IN HEADNOTES
5A Am Jur, Automobiles and Highway Traffic § 39.

Case by Phoenix Assurance Company, Ltd., a foreign corporation, against G. E. Tripp for property damage resulting from automobile collision. Verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Murchie, Calcutt & Brown,* for plaintiff.

*Harry T. Running,* for defendant.

BLACK, J. This is a negligence case. It was tried to the court and a jury. Defendant had verdict and judgment. The sole question of moment is whether the trial judge correctly instructed the jury to determine whether vicinity of the presently described collision constituted a business or residence district as defined by statute.

The motor car driven by plaintiff's assignor was proceeding north on State trunk line highway US–131, in the county of Antrim. It came into collision on the east half of the trunk line with a southbound motor car driven by defendant. Immediately prior to collision defendant turned his car to the left and into the path of the oncoming northbound car, intending to proceed east on an intersecting secondary road. Defendant did not observe the oncoming car at any time. His negligence, and causal connection thereof with the result complained of, was fairly established. This leaves issue, addressed to contributory negligence, whether the northbound car approached the point of collision at an excessive or unlawful rate of speed.

Plaintiff's assignor testified he was driving, on approach to the intersection, at the rate of approximately 40 to 50 miles per hour. Defendant says such speed of approach was unlawful and refers to the 25-mile speed limit fixed by CLS 1954, § 257.627 (Stat

Ann 1952 Rev § 9.2327), for statutorily defined business and residence districts.

The only evidence shown by the record, tending to establish notice that a restricted speed area was ahead of plaintiff's assignor, is the fact that a conventional highway road sign, facing south and carrying the word "Antrim," warned of approach to a town or village. The sign stood some 500 feet south of the intersection. Testimony and photographic exhibits brought here under Court Rule No 66 (1945) establish beyond dispute that "Antrim" is an unincorporated village, the combined residence and business parts of which (adjacent to the trunk line) are several hundred feet north of the intersection. Excepting as to one residence only, situated near the northwest corner of the intersection and facing on the side road, the territory contiguous to both sides of this trunk line in vicinity of the intersection is shown as "open country." It follows that the 25-mile speed limit provided in section 627 of the motor vehicle code did not govern plaintiff's assignor as he approached the intersection. That it might have, had he proceeded through and beyond the intersection, is of no causal moment.

The trial judge instructed the jury:

"Now, you are the ones who are going to determine whether or not this area was a business or residential district; you are the sole judges of whether it was or was not.

"There is no question that the accident happened within the limits of the village of Antrim—I think it is a village—bearing in mind this 45-mile-per-hour speed sign I don't believe was there at the time that this accident happened; but apparently it is all agreed that there was a sign there showing the word 'Antrim' on it some 500 feet south of the intersection where this collision occurred."

· ' After having deliberated nearly 7 hours the jury returned into court for further instruction. The following colloquy took place:

"*Foreman:* We would like, if it is possible, from you or anyone, to give us some enlightenment or a ruling on traffic laws pertaining to approaching any sign which indicates a residential or business district.

"*The Court:* Now,  *  *  *  a person might in some cases be driving, we will say, a little faster, but .the mere fact that man or woman was driving a little faster than that speed law or ordinance, the fact they are going that little bit faster, unless that directly caused the accident—was the direct or proximate cause of the accident—that 'would not make the man liable for the accident itself. It might make him liable for violating the speed law.

"*Foreman:* The information we wanted is where there is no speed indication, only a sign denoting a residential or business district or village—what does the law say, where there is no speed indicated?

"*The Court:* Well, we do have, it is true, a law in Michigan—it may not be the complete answer to your question—the motor vehicle law does provide as follows:

" 'It shall be prima facie (that is, on the face of it) lawful for the driver of a vehicle to drive the same at a speed not exceeding the following; but in any case when such speed would be unsafe it shall not be lawful (that is): 25 miles an hour on all highways in a business or residence district as defined herein.' ·

"*Mr. Calcutt:* Would the court define residence and business district, please, from the statute?

"*The Court:* Before I do that, I will read the rest of this particular section of the law. It further provides:

" 'It shall be prima facie unlawful for any person to exceed any of the foregoing speed limitations except as specified in section 629 of this chapter.'  .

"Now, that section 629* referred to provides that local authorities may change speed limits on highways within their jurisdiction. Now, I don't think there is any evidence in this case, is there, that the authorities of the unincorporated village of Antrim had any ordinance of any kind relating to speed in the unincorporated village of Antrim?

"*Mr. Running:* No, I think not, Your Honor.

"*Mr. Calcutt:* No, Your Honor.

"*The Court:* In other words, if that is so, they did not in any way change the State law, which is as I have read, applying to business and residential districts—the speed limit provided by State law is 25 miles an hour.

"Now, I will give you the accepted definition—and I will read it so that I make no mistake—of a business district and of a residential district. Here is the definition of a business district:

" 'The territory contiguous to a highway (right next to a highway) when 50% or more of the frontage thereon for a distance of 300 feet or more is occupied by buildings in use for business.'

"The definition of a residence district is:

" 'The territory contiguous to a highway not comprising a business district when the frontage on such highway for a distance of 300 feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business.'

"So, in determining whether or not this is a business or residence district, figure out the number of buildings around there, the character of the buildings and structures, and determine from that whether it is a residence district or a business district."

We hold, in view of the "300 feet or more" qualification, that there was no evidence justifying submission, to the jury, of question whether the territory contiguous to this intersection constituted either a business or residence district as defined by statute (CLS 1954, §§ 257.5, 257.51 [Stat Ann 1952 Rev

---

* CLS 1954, § 257.629 (Stat Ann 1952 Rev § 9.2329).—Reporter.

§§ 9.1805, 9.1851]). Accordingly, and since injection of that issue into the court's instructions directly affected the question of contributory negligence and may well have influenced the jury's verdict considering above quoted emphasis thereof, we are obliged to hold that the trial judge reversibly erred.

Reversed for new trial. Costs to plaintiff.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and CARR, JJ., concurred.