WINCHESTER v. MEADS.

1. PHYSICIANS AND SURGEONS—MALPRACTICE—INTRAVENOUS FEEDING —HEMOLYSIS—NEGLIGENCE.

Trial court's finding in malpractice action that defendant physician and surgeon was guilty of negligence as a matter of law was not error, where the evidence is undisputed that the administration of the third intravenous feeding of 1,000 cc. of distilled water without the addition of salt or glucose so as to prevent hemolysis was not in conformance to the standard practice in the community after an operation for removal of ulcer.

2. SAME — MALPRACTICE — HEMOLYSIS — DAMAGES — REQUESTS TO CHARGE — CLOSING ARGUMENT.

It was error for trial court to refuse to give plaintiff's requests to charge relative to damages because of hemolysis which occurred after an improper administration of an intravenous feeding, where damages caused by the hemolysis were claimed in the declaration, in his motion for directed verdict, and in his requests to charge, and was proved to have occurred and had caused several medically identifiable symptoms, notwithstanding plaintiff's counsel may not have made such claim in his closing argument.

3. TRIAL—PLEADING—EVIDENCE—INSTRUCTIONS.

Instructions to a jury should not go beyond matters put in issue by the pleadings and supported by the proof, but they should cover all the material issues of fact thus raised that have not been abandoned or waived.

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Physicians and Surgeons § 78 et seq.
[2] 41 Am Jur, Physicians and Surgeons § 132.
[3] 53 Am Jur, Trial § 574.
[4] 41 Am Jur, Physicians and Surgeons §§ 133, 134.
[5] 14 Am Jur, Costs § 95.

4. PHYSICIANS AND SURGEONS—MALPRACTICE—DAMAGES—NEW TRIAL
—ULCER.

    Issue of damages caused by malpractice of defendant to be re-
    solved on new trial ordered in malpractice case, is without lim-
    itation to any particular feature of such damages, where de-
    fendant was guilty of negligence as a matter of law in post
    operative treatment of plaintiff after removal of ulcer.

5. COSTS—MALPRACTICE—NEW TRIAL—DAMAGES.

    Costs are ordered to abide final result where new trial as to
    issue of damages is ordered in action for malpractice.

Appeal from Jackson; Dalton (John C.), J. Sub-
mitted February 5, 1964. (Calendar No. 36, Docket
No. 49,740.) Decided April 6, 1964.

Case by Clinton T. Winchester against Jason B.
Meads for malpractice. Verdict and judgment for
defendant. Plaintiff appeals. Reversed in part and
remanded for new trial limited to damages only.

*Gussin, Weinstein & Kroll* (*William J. Weinstein*
and *George Belitsos,* of counsel), for plaintiff.

*Rosenburg, Painter, Stanton & Bullen* (*Frank C.
Painter,* of counsel), for defendant.

KELLY, J. Plaintiff brought action against defend-
ant doctor to recover damages purportedly suffered
by him as a result of defendant's alleged malpractice.

Plaintiff entered the hospital on March 4, 1959,
for an ulcer operation, which operation was per-
formed by defendant shortly after midnight on
March 5, 1959. After plaintiff was returned to his
room he was given 2 intravenous feedings at the
direction of defendant. The malpractice charged
arises from the fact that when plaintiff received his
third intravenous feeding, which lasted approxi-
mately 3 hours, beginning at about 9:30 a.m. on
March 6, 1959, there had not been added any salt or

glucose to the distilled water, which additive was necessary in order to prevent hemolysis (the breaking down of the red blood cells caused by pure distilled water entering the bloodstream) from occurring.

In directing the first 2 intravenous feedings, defendant had ordered the addition of 5% glucose, but while writing up his order for the third intravenous feeding on the afternoon of March 5th, defendant was called out of the room on an emergency and the instruction to add glucose was never entered on defendant's order. This incomplete and erroneous order was carried out on the morning on March 6th by an unidentified nurse. After later being informed of what had transpired, defendant initialed the order.

Plaintiff, on December 18, 1959, filed a declaration alleging that as a direct and proximate result of receiving the pure distilled water he suffered hemolysis and irreparable damage to his heart, as well as other damages.

At the trial it was admitted by all doctors who testified, including defendant, that it was not the standard of practice in the community for a doctor to give a patient 1,000 cc. of distilled water without glucose added and that hemolysis had occurred. There was, however, conflicting evidence as to whether this hemolysis was damaging to plaintiff in and of itself and/or whether it had caused any damage to various internal organs.

At the close of defendant's case, plaintiff made a, motion for directed verdict on the questions of defendant's alleged malpractice and as to whether such malpractice proximately caused the hemolysis, while reserving for the jury the question of damages resulting from the hemolysis and the question of whether the hemolysis proximately caused the alleged damage to plaintiff's heart.

The trial court denied plaintiff's motion, but in his charge to the jury instructed the jury that he was finding defendant guilty of negligence as a matter of law and that the only question for the jury to decide was whether the plaintiff's heart condition was the direct and proximate result of defendant's negligence.

The trial court refused to give the following instructions requested by plaintiff:

"I further charge you in this case that you must find that defendant, Jason B. Meads, was guilty of malpractice because there is undisputed evidence in this case from both the doctors produced by plaintiff and the doctors produced by defendant, including defendant himself, that what defendant did in this case, and that is the giving of the 1,000 cc. of distilled water to plaintiff following a serious gastric ulcer operation, was not in accordance with the practice of doctors in Jackson county, and I charge you that you must find a verdict in this case for plaintiff, and for damages if you find that it has been proven by the necessary preponderance of the evidence as I will define it to you.   *   *   *

"I further charge you that you need not consider the issue of liability in this case for the court is now instructing you that you must return a verdict for plaintiff, and you shall go to the question of damages, which I will now discuss with you.   *   *   *

"I further charge you that you shall award to plaintiff a reasonable, fair and adequate amount for the admitted damage that was done to plaintiff's red blood cells for that duration of time that you find the red blood cells were damaged.   *   *   *

"I further charge you that the only verdict you can render in this case is in favor of plaintiff, Clinton Winchester, and against defendant, Jason B. Meads, in a sum of money which you must find will reasonably, adequately and fairly compensate plaintiff for those damages, which I have charged under

the law, and which you find under the facts were a proximate result of defendant's malpractice."

The trial court stated to plaintiff's counsel that he did not instruct the jury on the question of damages caused by the fact of hemolysis in and of itself because plaintiff made no claim for such damages in his closing argument and, therefore, the trial court assumed he had waived any such claim.

The jury returned a verdict of no cause for action. Plaintiff then moved for a judgment notwithstanding the verdict, which was denied.

Plaintiff now appeals contending that the trial court erred in refusing to direct a verdict on the question of damages resulting from the hemolysis and in refusing to instruct the jury *in re* determination of the amount of damages for the hemolysis, and asks that we remand solely for a determination of such damages caused by the hemolysis.

Defendant, in his brief, while arguing in favor of the trial court's finding of waiver on the issue of hemolysis damages, contends that the trial court erred in ruling as a matter of law that defendant was guilty of negligence. Defendant admits that it is not the standard of practice to give a patient 1,000 cc. of distilled water without glucose, but argues that the filling out of an incomplete and unsigned order did not of itself violate any standard of practice; that the order while clearly stating that it was for the afternoon of March 5, 1959, was not carried out until the following day by an unidentified nurse; and that although defendant initialed the order of March 6, 1959, after he learned of the incident in question thus assuming responsibility for the unsigned and incomplete order, such act was not an admission of negligence and defendant cannot be held responsible for the acts of the unidentified nurse.

Although defendant is correct in asserting that there is no testimony precisely on the point of whether an incomplete and unsigned order in and of itself violated any standard of practice, this does not help defendant. It is undisputed that the giving of 1,000 cc. of distilled water without glucose does not conform to the standard of practice in the community and that as a result of the carrying out of the incomplete order hemolysis occurred. Defendant cannot escape ultimate responsibility for this unfortunate accident by shifting the blame onto an unidentified nurse. This entire episode resulted from defendant's admitted error and he must be held responsible for its consequences.

We, therefore, hold that the trial court was not in error in finding defendant guilty of negligence as a matter of law.

However, the trial court was in error in refusing to give plaintiff's requested instructions above quoted. A claim for damages caused by the hemolysis was set forth in plaintiff's declaration, in his motion for directed verdict, and in his requested instructions. In addition, there was abundant testimony to the effect that hemolysis did occur and that it caused several medically identifiable symptoms, *e.g.,* blood in urine, perspiration and weakness of patient.

We cite with approval the following:

"Ordinarily, a court is not warranted in submitting to a jury by instructions an issue raised by a pleading which is abandoned by the party pleading it, and in support of which no evidence is presented." 53 Am Jur, Trial, § 577, p 455.

"While the instructions should not go beyond matters put in issue by the pleadings and supported by the proof, they should cover all the material issues thus raised in a case. A court instructing the jury may not ignore or withdraw from the jury is-

sues of fact which are in the case and supported by evidence." 53 Am Jur, Trial, § 581, p 458.

"As a general rule, a party's failure to request the submission of a particular issue to the jury constitutes a waiver of the issue, and it is not an assignable error that the court failed to submit such issue to the jury." 88 CJS, Trial, § 220, p 506.

"Ordinarily, where an issue is abandoned or expressly withdrawn by the parties, the court should not submit it to the jury, and no instruction should be given on such issue." 88 CJS, Trial, § 275, p 737.

"It is the duty of the court to submit to the jury the material issues raised by the pleadings and the evidence." 88 CJS, § 301, p 814.

Because the declaration alleged and the evidence established that hemolysis did in fact occur and a specific instruction was requested concerning damages for the hemolysis, the trial court was incorrect in refusing to give the requested instructions.

Judgment reversed and the case remanded for retrial of the question of the amount of damages plaintiff suffered on account of defendant's malpractice, without limitation to any particular feature of such damages. Costs to abide final results.

KAVANAGH, C. J., and DETHMERS, BLACK, SOURIS, SMITH, O'HARA, and ADAMS, JJ., concurred.