## McKINCH v DIXON

### OPINION OF THE COURT

1. AUTOMOBILES—INSTRUCTIONS—DEFECTIVE DESIGN—BRAKING SYSTEM—MASTER CYLINDER—EVIDENCE.

The record contains the requisite evidentiary foundation sufficient to support an instruction to the jury regarding defective braking system design where plaintiff was injured when a tow truck manufactured by a defendant jumped a curb and crushed plaintiff's foot, because, while admittedly scant, there was some evidence touching on design when a witness gave his opinion that the groove in the master cylinder was caused by a grain of sand which could have dropped in whenever the top was removed for checking the fluid level when the brakes were adjusted and that there was no screen or filter to prevent dirt from falling into the master cylinder, and defendant-manufacturer's witness testified that in designing the system, a filter was not put on because it was not regarded as a problem but it could have been taken care of had it been considered to be a problem; trial court did not err in submitting the question to the jury, over that defendant's objection thereto, that if the jury found the defendant-manufacturer installed a defectively designed braking system on the vehicle the jury could find against that defendant because the Michigan Supreme Court cannot say that all reasonable men would agree that the lack of a filter or screen in the master cylinder did not constitute faulty design.

### DISSENTING OPINION

### M. S. COLEMAN, J.

2. APPEAL AND ERROR—DEFECTIVE DESIGN—EVIDENCE.

*Trial court erred by submitting the theory of defective design to*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur, Trial § 580.
[1, 2, 4] 8 Am Jur 2d, Automobiles and Highway Traffic § 1034.
[3, 5] 53 Am Jur, Trial §§ 668, 674.
    29 Am Jur 2d, Evidence § 263.
[4] 53 Am Jur, Trial § 182.

*the jury where this theory was not advanced by plaintiff nor was there sufficient evidence adduced to support such a theory.*

3. TRIAL—INSTRUCTIONS—ISSUES—EVIDENCE.
   *The task of instructing the jury is a difficult one; however, Michigan Supreme Court cases demand that the instructions deal only with issues supported by the evidence.*

4. AUTOMOBILES—JURY—INSTRUCTIONS—DEFECTIVE DESIGN—BRAKING SYSTEM—MASTER CYLINDER—EVIDENCE.
   *The Michigan Supreme Court's decision that it could not hold that the trial court erred in submitting the question of a truck's defectively designed braking system to the jury under the instruction given because it "cannot say that all reasonable men would agree that the lack of a filter or screen in the master cylinder did not constitute faulty design" is certainly a novel application of that standard of review, and by adopting it, the Court uses a standard designed to test factual sufficiency to decide a question of legal sufficiency.*

5. TRIAL—INSTRUCTIONS—ISSUES—EVIDENCE.
   *The trial judge, by Michigan Supreme Court decisions and rules, must present in his jury instructions only those issues and theories which are supported by the evidence.*

Appeal from Court of Appeals, Division 3, Fitzgerald, P. J., and Quinn and Danhof, JJ., reversing and remanding Eaton, Richard Robinson, J. Submitted September 5, 1973. No. 12 September Term 1973, Docket No. 54,430.) Decided March 19, 1974.

43 Mich App 229 reversed.

Complaint by Frank L. McKinch against Edward N. Dixon, Jack Dykstra Ford, Inc., and Ford Motor Company for damages for injuries sustained in an automobile accident. Cross-claim by Jack Dykstra Ford, Inc., against Ford Motor Company. Verdict and judgment for plaintiff against Ford Motor Company only. Verdict and judgment for Ford Motor Company on the cross-claim. Ford Motor Company appealed to the Court of Appeals. Upon the death of Frank L. McKinch, Vaughn L. McKinch, executor of his estate was substituted as plaintiff. Reversed and remanded for new trial as

to Ford Motor Company. Plaintiff appeals. Reversed and remanded for entry of judgment on the verdict.

*Sinas, Dramis, Brake, Turner, Boughton & McIntyre, P. C.,* for plaintiff.

*DeVine & DeVine* (by *Allyn D. Kantor),* for defendant Ford Motor Company on appeal.

T. G. KAVANAGH, J. The Court of Appeals[1] set aside a jury's verdict for the plaintiff against defendant Ford Motor Company and remanded the case for retrial against that defendant only.

The facts giving rise to the claim are not complicated.

Plaintiff's decedent sustained severe and permanent injury to his right foot when a tow truck driven by defendant Dixon jumped a curb and crushed decedent's foot against a cement step.

The death of plaintiff's decedent occurred after this suit was tried and while the appeal was pending in the Court of Appeals. It does not appear to have been caused by the accident.

The action was brought against defendant Dixon for recovery of damages for the personal injuries sustained. The complaint alleged negligence on the part of defendant Dixon in the operation of his vehicle. Plaintiff, by an amended complaint, added Jack Dykstra Ford, Inc., as a defendant, alleging that Dykstra breached its duty to repair the Dixon vehicle in a workman-like manner. In plaintiff's second amended complaint Ford Motor Company was added as a defendant, and the allegation made that Ford neglected to provide brakes reasonably fit for their intended purpose and neglected to

---

[1] 43 Mich App 229; 203 NW2d 758 (1972).

advise or warn the defendant Dixon of the faulty brakes of the truck. Subsequently, Jack Dykstra Ford, Inc., filed a cross-claim against defendant Ford Motor Company, alleging that if the brakes on the vehicle did fail and that such failure was a proximate cause of the accident, such failure was due to breach of implied and expressed warranties by cross-defendant Ford Motor Company in that the master cylinder of the vehicle and its related apparatus was defectively manufactured and/or designed so as to allow fluid to leak out of the cylinder, causing a failure of the braking system of the truck. Dykstra alleged that if a verdict was entered against it, it would be entitled to indemnification from Ford Motor Company. In its answer, Ford Motor Company denied that it was liable to plaintiff McKinch, or to cross-plaintiff Dykstra.

The Court of Appeals concluded that the trial court committed reversible error by submitting to the jury a field of inquiry, *viz.*, defective design, which was not within the testimony.

It cited as relevant the following excerpt from the court's charge:

" 'Three: If you find that defendant Ford Motor Company installed *a defectively designed braking system* on this vehicle; or that at the time the vehicle left its factory Ford failed to provide adequate rubber seals for the master cylinder, or failed to provide an adequate master cylinder housing for defendant Dixon's vehicle when used for its intended purpose; and if you find that this failure was the proximate cause of the accident— then you will find for plaintiff and against defendant Ford.

" 'If you find that defendant Ford did, at the time the vehicle left its factory, provide it with *an adequately designed braking system* when used for its intended purpose, and did provide it with rubber seals for the master cylinder, and with a master cylinder, all of

which were free from defects and reasonably fit for their intended purposes at the time it left Ford's; or if you find that the Ford people failed in one of these respects, but that such failure was not a proximate cause of the accident—then you will find for defendant Ford and against plaintiff.' " (Emphasis supplied.)

The Court then said at 232:

"The record in the instant case does not contain the requisite evidentiary foundation sufficient to support the instruction regarding defective braking system design."

We disagree.

While admittedly scant, there was some evidence touching on design. Witness Smith gave his opinion that the groove in the master cylinder was caused by a grain of sand which could have dropped in whenever the top was removed for checking the fluid level when the brakes were adjusted. He also testified there was no screen or filter to prevent dirt from falling into the master cylinder.

Witness Riding, defendant Ford's expert, testified that in designing the system, they did not put a filter on because they did not regard it as a problem. He testified that they could have taken care of it had they considered it to be a problem.

According to the transcript of the court's jury charge defendant Ford's counsel objected to the instruction on design and the court ruled on the objection as follows:

"*Mr. Reagh:* As I previously stated, and stated in regard to objections to charge, Mr. Buchanan did argue in regard to defective design, and I don't believe there was anything in the case to warrant such an argument or such an instruction. The only thing in this case beyond the design that we have is purely speculation and only along the line that there must have been some

other way of doing it. I don't think that is proper argument in view of the facts in this case. And also don't think there should be a charge on it.

*"The Court:* As Counsel pointed out earlier today, there was a small amount of testimony concerning the possible beneficial effect of a screen being placed in the cylinder. I think that is enough factual element—injects enough factual element into the case as to design on it."

Because we cannot say that all reasonable men would agree that the lack of a filter or screen in the master cylinder did not constitute faulty design, we cannot hold that the trial court erred in submitting the question to the jury under the instruction given.

The Court of Appeals is reversed, and the cause remanded for entry of judgment on the jury's verdict. Costs to plaintiff.

T. M. Kavanagh, C. J., and Swainson, Williams, and Levin, JJ., concurred with T. G. Kavanagh, J.

M. S. Coleman, J. *(dissenting).* I cannot join in reversing the Court of Appeals. It was error for the trial court to submit the theory of defective design to the jury. This theory was not advanced by plaintiff nor was there sufficient evidence adduced to support such a theory.

## *FACTS*

Frank McKinch was injured on November 26, 1966. A truck being parked by defendant Dixon came over the curb and struck McKinch. In a complaint filed July 23, 1968, plaintiff sought $75,-000 damages.

On December 9, 1968 plaintiff filed an amended

complaint adding Jack Dykstra Ford as a defendant. This defendant was alleged to have failed to observe and repair faulty brakes on defendant Dixon's truck. Defendant Ford Motor Company became involved when plaintiff filed another amended complaint on September 2, 1969. This complaint alleged that Ford "failed or neglected to provide brakes reasonably fit for their intended purpose" and also failed to advise defendant Dixon of the faulty brakes.

The final amended complaint was filed June 8, 1970. It incorporated all of the complaints listed above and included a claim that Ford breached its expressed and implied warranty that the truck "was reasonably fit for its intended purpose and was of merchantable quality". Previously, on April 9, 1970, defendant Dykstra filed a cross-claim against Ford alleging that Ford had breached expressed and implied warranties "in that the master brake cylinder * * * was defectively manufactured and/or designed".

At trial, defendant Dixon claimed the accident occurred because the brakes on his truck suddenly failed. He said they were working properly just prior to the accident. The accident happened approximately three weeks after the brakes had been adjusted by defendant Dykstra. At the time of the accident, the truck had been driven about 23,500 miles.

After the accident the truck was taken to defendant Dykstra to be repaired. A Mr. Smith, the employee who worked on the truck, said the brake fluid had leaked out of the master cylinder. He felt this was due to a small crease or groove in the primary cup. In his opinion this witness felt the groove could have been caused by sand or dirt having been introduced into the system. He said

there was no screen or filter to prevent sand from entering the system. He found no pits or burrs on the inside of the master cylinder which could have caused the creasing. This witness had been a mechanic for 25 years. He concentrated on brake work.

The service manager for defendant Dykstra testified. He said such grooves as found in the rubber primary cup were usually caused by a defect on the inside of the master cylinder. He did not feel sand could cause the creasing because it would imbed itself in the soft rubber. This 28-year-old witness had never been a mechanic.

During the course of the service manager's testimony, the attorney for defendant Dykstra sought to question him concerning a possible design defect in the braking system. The court did not "think this witness is qualified by training and experience" to compare braking systems. The court said that this area should be explored by questioning of the expert witness for defendant Ford.

Ford's witness did not believe that the groove in the primary cup was caused either by sand in the system or a defect in the cylinder. He felt the groove was caused by excessive pressure resulting from a special type of emergency brake defendant Dixon had installed on the truck after purchase.

Defendant Dykstra's attorney cross-examined the expert. The questioning was primarily concerned with the operation and effect of the emergency brake. There was little discussion concerning defective design. The following excerpt reveals the extent of the questioning:

"*Q.* You don't consider in designing the system, of course, you don't consider the fact that dust,—the possibility of dust or sand getting in the system could cause damage to it?

"*A.* This specific damage to it?

"*Q.* You don't feel that could cause this kind of damage?

"*A.* No.

"*Q.* If it was a problem to the system, you could have put a filter on,—if you felt it was creating a problem?

"*A.* Well, you are creating another problem if you do that, because if you put a filter on and it's not taken care of and gets plugged up, you create a vacuum. You'll have trouble with the braking system. Further, you can't see the level of the fluid in the master cylinder.

"*Q.* Mr. Riding, if you felt there was a problem, would it not be possible to mount a filter, a very thin screen filter, that as the oil comes in and can be filtered through, and so as you take the cap off any dust can be filtered through. If that was a problem you could take care of that?

"*A.* If it was a problem.—The cap itself has a diaphragm on it. Nothing could get in there cause the cap has a rubber diaphragm on it.

"*Q.* In other words, if you pull into a gas station and ask them to take care of your car, they can take the cap off to check the master cylinder to see if the fluid is up there? To see if you've got fluid in there, that is done as part of routine maintenance of a vehicle, is that right?

"*A.* Yes, sir.

"*Q.* And if Ford felt these gas stations might drop something in there that would be a problem in the operation or the brakes, Ford would then, I'm sure, put a filter in there and stop that, wouldn't they?

"*A.* Yes, sir."

At the close of the evidence, the parties stood in this posture. Defendant Dixon conceded injuring plaintiff but put the blame on defendant Dykstra who denied any wrongdoing and said any fault was Ford's, who denied responsibility and said the injury resulted from the actions of defendant Dixon.

During the instructions, the court said the jury

would have to make several decisions regarding liability between the plaintiff and each of the defendants. He said this as to defendant Ford:

"If you find that Defendant Ford Motor Company installed a defectively designed braking system on this vehicle; or that at the time the vehicle left its factory Ford failed to provide adequate rubber seals for the master cylinder, or failed to provide an adequate master cylinder housing for Defendant Dixon's vehicle when used for its intended purpose; and if you find that this failure was the proximate cause of the accident— then you will find for Plaintiff and against Defendant Ford.

"If you find that Defendant Ford did, at the time the vehicle left its factory, provide it with an adequately designed braking system when used for its intended purpose, and did provide it with rubber seals for the master cylinder, and with a master cylinder, all of which were free from defects and reasonably fit for their intended purpose at the time it left Ford's; or if you find that the Ford people failed in one of these respects, but that such failure was not a proximate cause of the accident—then you will find for Defendant Ford and against Plaintiff."

Ford objected to these instructions.

The jury returned a verdict in favor of plaintiff against Ford. Defendants Dixon and Dykstra were not held liable. Dykstra was awarded nothing in its cross-claim against Ford. Plaintiff won a verdict against Ford on a theory which he did not advance and which was not supported by an evidentiary base.

The Court of Appeals reversed, 43 Mich App 229; 203 NW2d 758 (1972). Its conclusion was that the record did not "contain the requisite evidentiary foundation sufficient to support the instruction regarding defective braking system design". (p 232.) It remanded for a new trial as to Ford only.

## COURT RULE

GCR 1963, 516 concerns the instructions to the jury. Section 7, effective April 14, 1970, deals with the statement of issues and theories of the parties. It says, in part:

"The statement shall set forth as issues only those disputed propositions of fact which are supported by the evidence. The statement of the theory may include those claims supported by the evidence or admitted."

Also see Standard Jury Instruction 20.01.

## DISCUSSION

Defendant Ford's objection to the instructions specifically averred that there was nothing "in this case that would warrant any instructions on defective design". The court noted "a small amount of testimony" dealing with a "possible beneficial effect of a screen being placed in the cylinder". The court thought this was sufficient to warrant submission of the design theory to the jury.

The "small amount of testimony" the court referred to was not in any way connected with a discussion of the design defect. One witness felt the groove in the primary cup was due to sand or dirt being introduced into the system. In response to questioning, he did say there was no screen or filter to trap dirt.

This witness was the mechanic who repaired the brakes after the accident. He did not purport to be an expert on the question of design, nor was he so qualified. His testimony was not elicited in support of the theory of defective design. Yet his testimony is cited as support for submission to the jury of the defective design theory.

Neither plaintiff nor defendant Dykstra clearly set forth the elements of the defective design theory. Dykstra's questioning of Ford's witness lacked specificity. It was not directed toward establishing defective design. There was no showing of Ford's duty. There was no showing that Ford neglected its duty. There was no showing that Ford negligently performed its duty. The only showing was "a small amount of testimony" concerning a "possible beneficial effect". This sole expert said that sand could not cause this type of damage.

The portion of rule 516.7 quoted above reiterates a theory of law which has long been part of this state's jurisprudence. For example, in *Hewitt v Begole,* 22 Mich 31 (1870), the trial court had instructed the jury, assuming that certain evidence had been introduced. The evidence had not been submitted. This Court reversed the judgment.

In *Comstock v Norton,* 36 Mich 277 (1877), the Court reversed because an instruction had not been given. It said "plaintiff was entitled to a charge applicable to the theory *he contended for and which his evidence tended to support".* (p 280.) (Emphasis added.) Also see *Ranta v Newport Mining Co,* 180 Mich 459; 147 NW 609 (1914), *Winchester v Meads,* 372 Mich 593; 127 NW2d 337 (1964) and *Houck v Snyder,* 375 Mich 392; 134 NW2d 689 (1965). However, in *Folkerts v Standish,* 55 Mich 463; 21 NW 891 (1885), the Court repeated that it is error to give a charge which is unsupported by the evidence. Also see *Phoenix Assurance Co v Tripp,* 348 Mich 59; 81 NW2d 420 (1957).

The trial court in *Union Trust Co v Parker,* 251 Mich 630; 232 NW 360 (1930) had granted plaintiff's motion to strike certain evidence from the

record. However, this evidence was incorporated into the instructions. This Court said the instructions "must be based upon the evidence" and the trial court's acts were error.

*Parker* was cited in *Susich v Michigan Consolidated Gas Co,* 292 Mich 612; 291 NW 26 (1940) supporting the statement that the instructions "must be based upon the evidence * * * and should be confined to the issues presented by the evidence". (p 616.) Also see *Litvin v Joyce,* 329 Mich 56; 44 NW2d 867 (1950) and *Baker v Alt,* 374 Mich 492; 132 NW2d 614 (1965).

The Court reversed a jury verdict in *Horst v Tikkanen,* 370 Mich 65; 120 NW2d 808 (1963) in part because the instructions assumed "facts neither alleged nor proved". (p 75.) The Court also found error in the instruction which assumed "a theory not expressly developed by defendants Tikkanen either in the pleadings or the proofs". (pp 76–77.)

## *CONCLUSION*

The task of instructing the jury is a difficult one. *In re Wood Estate,* 374 Mich 278; 132 NW2d 35 (1965), contains this recognition at p 292:

"That frequently difficult task of jury instruction rests in the first instance with the trial judge who must translate our legal rulings, cast in the law's shorthand abstractions, into language comprehensible by the jury and directly relevant to the evidentiary facts of the case being tried. See our similar comment in *Hill v. Harbor Steel & Supply Corp.,* 374 Mich 194, 207 [132 NW2d 54 (1965)]."

However, this case and those cited above demand that the instructions deal only with issues supported by the evidence.

The Court has reversed the Court of Appeals because it "cannot say that all reasonable men would agree that the lack of a filter or screen in the master cylinder did not constitute faulty design". This is certainly a novel application of that standard of review. By adopting it, the Court uses a standard designed to test factual sufficiency to decide a question of legal sufficiency.

By our Court decisions and rules, the judge must present only those issues and theories which are supported by the evidence. The plaintiff did not propose the theory of defective design. The Court admits the evidence regarding design was scant. That is too generous. If any such evidence was present, it was so infinitesimal as to foreclose jury consideration of the issue of design defect. I would affirm the finding of the Court of Appeals and remand for a new trial.

J. W. FITZGERALD, J., did not sit in this case.