AUGUST HAGAN v. THE CHICAGO, DETROIT & CANADA GRAND TRUNK JUNCTION RAILROAD COMPANY.

*Railroad companies—Liability for loss by fire—Evidence—Improved appliances.*

1. Testimony cannot be said to be undisputed, when inconsistent with some established fact in the case, or one regarding which testimony has been admitted.

   So *held*, where in a negligence case against a railroad company to recover the value of buildings destroyed by fire, alleged to have been caused by sparks thrown from defendant's engine, the uncontradicted testimony on the part of the defendant tended to show that the machinery, smoke-stack, and fire-box of the engine were in good order, and properly managed, and of the most approved kind, and that the engineer and fireman were competent and skillful; which facts it was claimed by the defendant should have been treated as established, and a verdict directed in its favor. And it is held that the court very properly declined to take the case from the jury, or to pass upon the conclusiveness of the testimony offered by the defendant.

2. How. Stat. § 3378, making railroad companies liable for all loss or damage to property by fire originating from its engines, unless proof is made to the satisfaction of the jury that the machinery, smoke-stack, or fire-boxes of such engines were in good order and properly managed, contemplates the communication of fire, and consequent loss and damage, notwithstanding the exercise of prudence and care in the selection of appliances and in the management and operation of trains; and it fixes the standard of condition and management, but does not attempt to establish a standard of kind or quality of appliances.

3. Before a railroad company can be made liable by reason of its failure to adopt other appliances, they must be shown to have been well and popularly known, and their efficiency must have been demonstrated by actual use.

4. Where, in a suit against a railroad company to recover the value of buildings destroyed by fire communicated from its engine, it appears that the buildings were insured, and that the loss has been paid to the plaintiff, evidence of the amount

86 615
90 607
86 615
108 340
86 615
108 401
86 615
111 394
86 615
113 589
86 615
a121 327
121 330
86 615
125 283
86 615
s49NW 509
129 607
86 615
s49NW 509
d131 ¹100
86 615
139 ¹317
86 615
e149 ¹282

paid is immaterial; the question being ruled by *Perrott v. Shearer*, 17 Mich. 48, 55.

5. It must be conceded that in operating a railroad it becomes necessary, at times, to make time between given points, and the running of a freight train at the rate of 40 miles an hour for this purpose is not in itself negligence.

6. In this case the following instructions should have been given to the jury, and their refusal was error:

"*a*—You are to consider that the necessity of running railroad cars with regularity and uniformity is not a matter of convenience merely, but the business cannot be done at all unless calculations are made upon the movements of trains. The risks attendant upon a disturbance of that regularity are risks of human life, and not mere business delays, and it would be in the highest degree dangerous to make the movements of the cars vary with the wind and weather.

"*b*—The engineer and fireman, in managing the train, are at liberty, and it is their duty, to run their train as nearly on time as possible; and in case of a way freight, whose length of stops at the stations is necessarily irregular, they are not to be considered negligent by reason of using natural and reasonable means to make time."

Error to Macomb. (Canfield, J.) Argued April 14, 1891. Decided July 28, 1891.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*E. W. Meddaugh,* for appellant.

*Lungerhausen & Erskine,* for plaintiff.

[The points of counsel are fully stated in the opinion. —REPORTER.]

McGRATH, J. This action was brought to recover the value of certain buildings and contents destroyed by fire, alleged to have been caused by sparks thrown from an engine running upon defendant's road, upon which plaintiff's farm abuts. Plaintiff had judgment, and defendant appeals.

Plaintiff's testimony tended to show that the fire occurred September 15, 1888, at about 9 o'clock A. M.; that the buildings burned were located about 160 feet from the track; that there had been no rain for about four weeks, and everything was very dry; that there was a high wind, which was blowing with the train, and in the direction of plaintiff's buildings; that the train was running at a high rate of speed; that the engine was laboring very hard; that the fireman had the door of the fire-box open, and was poking the fire; that the poking of the fire would tend to throw out sparks; that, as the engine approached plaintiff's buildings, smoke of a bluish-gray color, streaked with red, was seen to roll over the buildings, and, in the course of a few minutes, fire was discovered in the shingle roof of one of the sheds, which spread to the other buildings; that the roof which took fire sloped towards the train as the train approached; that just before it reached plaintiff's place, after the same train had passed, on that morning, fire was discovered in a clover field near defendant's right of way, about half a mile south of plaintiff's buildings, in the direction from which the train came.

The defendant's testimony tended to show that the machinery, smoke-stack, and fire-box of the engine were in good order, and were of the most approved kind, the best in use; that they had been examined on the morning of that day, and were examined the next day after the fire, by competent persons, and found to be in good order; that the engineer and fireman were skillful and competent, and were managing the train carefully and skillfully; that the fireman was not poking the fire as it passed plaintiff's premises; that it was not necessary to poke the fire, and that poking the fire would not tend to throw out sparks; that an engine in good repair, and properly managed, could not throw fire from the track

to plaintiff's buildings, and that the barn was on fire before the train reached the buildings. The fact and extent of the fire were not disputed, nor was it attempted to be shown that the fire could have originated in any other way.

The first question raised is that the verdict of the jury is not warranted by the evidence; that inasmuch as the testimony introduced by defendant, that the apparatus was in good order and was properly managed, and that the engineer and fireman were competent and skillful, was uncontradicted, those facts should have been treated as established, and a verdict directed for the defendant.

In the absence of any testimony tending to show that the fire could have happened in any other way, the jury were justified in finding that the fire was started by a spark from the locomotive. Having concluded that the fire was caused in that manner, they were entitled to consider, as bearing upon the question of negligence, not only defendant's testimony as to the condition of the locomotive, the competency and skillfulness of the engineer and fireman, and the proper management of the locomotive on that occasion, but also the testimony as to the poking of the fire, its effect upon the emission of sparks, and, in that connection, defendant's testimony that it was unnecessary to poke the fire. As bearing upon the question of the condition of the smoke-stack and fire-box and the management of the locomotive on that occasion, they were entitled to consider the testimony regarding the clover-field fire, and the testimony offered by defendant that an engine in good order, and properly managed, could not possibly throw fire from the track to plaintiff's buildings. The only inference that could be drawn from the testimony relating to the impossibility of the communication of fire from the locomotive to plaintiff's buildings, in view of the circumstances of fire, was that the

engine was either not in good order or was not properly managed. *Johnson v. Railway Co.*, 77 Iowa, 666 (42 N. W. Rep. 512).

Testimony cannot be said to be undisputed, when inconsistent with some other fact or circumstance, either established or regarding which testimony has been admitted. The court very properly declined to take the case from the jury, or to pass upon the conclusiveness of the testimony offered by the defendant.

It appeared that the buildings which were destroyed had been insured, and that the insurer had paid the loss, but the court rejected testimony as to the amount paid as immaterial, and this is assigned as error. The question is ruled by *Perrott v. Shearer*, 17 Mich. 48, 55.

The court instructed the jury as follows:

"1. If you find that the fire was caused by a spark from the engine, the law raises a presumption of liability on the part of the defendant. The burden of proof is then passed upon defendant, in order to escape such liability, to show affirmatively, to your satisfaction, that the engine from which the fire originated was, at the time in question, properly constructed, and equipped with the best approved appliances for preventing the escape of fire. * * * * * * * * * * * * * *

"2. In regard to the construction of its engine and appliances to prevent the escape of fire and sparks, a railroad company is required to keep constantly in use the most approved machinery and apparatus for that purpose on its engines. * * * * * * * * *

"3. If you are satisfied from the evidence that, at the time in question, the defendant's engine was properly constructed, and equipped with the best-known and most approved apparatus to prevent the escape of fire therefrom, and that the same was in good repair as to its machinery, fire-box, and smoke-stack, and the engine and train was properly managed with reasonable and ordinary care and skill by the servants and employés of the railway, then the plaintiff is not entitled to recover, and your verdict should be for the defendant. * * *

"4. It is not negligence in a railroad company to run

an engine which emits sparks, providing the company has the engine equipped with means and appliances to arrest the escape of sparks, recognized as the best known and in use, and approved as such by experienced railroad operators.  *  *  *  *  *  *  *  *  *  *  *

"5. If you do so find, then you will consider the question whether the defendant has satisfied you, by a fair preponderance of the evidence, that the engine was equipped, as I have stated to you, with proper and the best-known appliances to prevent the escape of fire."

Defendant introduced several witnesses who testified that the machinery, smoke-stack, fire-boxes, netting, and all the equipments of that engine for providing against the escape of fire and cinders, and providing against the danger of setting fires, were of the most approved order, form, and pattern known; that they were claimed to be the best in use; and that they were in use by the great majority of railroads in this country. The defendant requested the court to instruct the jury as follows:

"6. The engine was in good order, so far as this case is concerned, if at the time it was supplied with the best approved appliances to prevent the escape of fire, and such appliances were in good repair."

"13. In view of the fact that it is impossible to prevent the escape of sparks from a locomotive, it is not negligence in a railway company to run an engine which emits sparks, provided the company has the engine equipped with means and appliances to arrest the escape of sparks, recognized as the best known and in use, and approved as such by experienced railroad operatives."

"16. The appliances which a railroad is by law to use, to comply with its duty, are those most efficient to prevent the escape of sparks of smallest size, consistently with the successful making of steam."

While the instructions given were in accord with the defendant's theory of its own duty in the premises as indicated by its proofs and its requests, and for this reason, if no other error appeared, we might hesitate to reverse the judgment, yet the instructions that defendant was

"required to keep constantly in use the most approved machinery," of "the most approved pattern," the "best-known and most approved apparatus," the "best-known appliances," without further explanation, were misleading. How. Stat. § 3378, provides that—

"Any railroad company building, owning, or operating any railroad in this State shall be liable for all loss or damage to property by fire originating from such railroad, either from engines passing over such roads, fires set by company employés by order of the officers of said road, or otherwise originating in the constructing or operating of such railroad: *Provided,* that such railroad company shall not be held so liable if it prove, to the satisfaction of the court or jury, that such fire originated from fire by engines whose machinery, smoke-stack, or fire-boxes were in good order and properly managed."

This statute contemplates the communication of fire, and consequent loss and damage, notwithstanding the exercise of prudence and care in the selection of appliances and in the management and operation of trains. It fixes the standard of condition and management, but it does not attempt to establish a standard of kind or quality of appliances.

While the degree of care required of a railroad company, respecting the management and operation of its trains, must vary according to circumstances, there must of necessity be some stability in appliances, and railroad companies cannot be expected to be constantly changing appliances, or to instantly apply newly-discovered devices, nor can they be required to adopt every new and untried instrumentality, even though subsequent experience may demonstrate the same to be the more efficient. Indeed, the introduction of untried devices may of itself be negligence. The efficiency of an appliance can only be demonstrated by actual experience, and adoption and use are the real tests of approval. In view of our statute, and other similar statutory provisions which make rail-

road companies *prima facie* liable, prudent railroad companies naturally adopt appliances which will most effectually protect them from that liability, and at the same time protect their own property, and the general use of apparatus for that purpose grows out of these considerations. No individual should be held to a higher degree of care and prudence, in the selection and adoption of appliances, than that which is generally exercised by prudent railroad men using appliances for the same purpose. Unreasonable requirements should not be exacted. There should be some degree of security in the use of apparatus. The fact that an appliance is commonly used by prudent railroad men, and has been for a long time, for the same purposes, and has substantially guarded against the danger sought to be avoided, should be a good defense to a charge of negligence because of its use. Wide differences of opinion may exist among those desirous of reaching the same result. Two or more kinds of appliances may be used, each one of which is approved by a number of railroad companies which are managed by practical and prudent men, and the adoption of each may have been after careful consideration of the merits of all, yet, unless that adoption and approval has some weight, there is no safety in the use of either. In any event, before a railroad company can be made liable by reason of its failure to adopt other appliances, it must be shown that such appliances have been well and popularly known, and their efficiency demonstrated by actual use.

In *Hoyt v. Jeffers*, 30 Mich. 181, 192, cited by plaintiff, the rule laid down was applied to the facts of that particular case, and was subjected to qualifications. A mill was set in the midst of a city, and the mill chimney was without any apparatus for arresting the escape of sparks; and the Court held that it became the duty of the owner of the mill to avail himself of some such

apparatus as experience had shown to be reasonably adequate, if not the most effectual, to prevent the escape of sparks and fire from his chimney, whether such apparatus had ever been previously used upon that particular kind of chimney or not, so long as it was susceptible of being applied, and, if so applied, would operate to prevent or check the escape of such fire and sparks. It was then shown that spark-catchers constructed upon the same principle as those long in use, and well and publicly known, upon other smoke-stacks, would, if applied to this chimney, have substantially avoided the danger; and the Court say that this was so long and generally known that it was the duty of the defendant to have known it, and to have availed himself of their use. And on page 193, Mr. Justice CHRISTIANCY, speaking for the Court, says:

"In fact, I think the true rule is that the defendant, in adopting means to check the flow of sparks, and to avert the danger in question, under the circumstances of this case, was bound not only to adopt means calculated to avert the danger, but the means which, in the progress of science and improvement, have been shown by experience to be the best; unless, indeed, it be some invention so recently made as not to be generally known, or which the defendant, by reasonable inquiry for the best means, might not fairly be supposed to have obtained knowledge of, or unless the expense of such particular invention should be so excessive as to render its requirement practically unreasonable, when a less expensive mode of protection, substantially guarding against the danger, might be held sufficient."

In the present case, there was no evidence offered which tended to show that there were other appliances superior in kind to those in use, or even that there were other appliances used for that purpose, much less that there were other generally known and approved devices which were more efficient; and defendant was entitled to an instruction that it was not negligent in

the selection and adoption of its apparatus. The phrase, "the best-known appliances," is susceptible of different interpretations. It may be taken to mean the best appliances known, or the best approved or acknowledged appliances, or those appliances which are best known.

Plaintiff offered testimony tending to show that the train was running at the rate of 40 miles an hour; that the weather was very dry, and a high wind was blowing at the time. Defendant requested the court to instruct the jury as follows:

"4. You are to consider that the necessity of running railroad cars with regularity and uniformity is not a matter of convenience merely. The business cannot be done at all unless calculations are made upon the movements of trains. The risks attendant upon a disturbance of that regularity are risks of human life, and not mere business delays. It would be in the highest degree dangerous to make the movements of the cars vary with the wind and weather.

"Those who establish themselves in the neighborhood of railroads must know that trains are expected to run with regularity, and, if there are special risks arising from no want of care in the proper equipment and management of engines and trains, those risks are not chargeable to the railroad, but are incident to the situation."

The court gave the last paragraph, but declined to give the first.

Defendant's counsel also requested the court to give the following instruction, but the court declined:

"The engineer and fireman, in managing the train, are at liberty, and it is their duty, to run their train as nearly on time as possible; and in case of a way freight whose length of stops at the stations is necessarily irregular, they are not to be considered negligent by their use of natural and reasonable means to make time."

It must be conceded that in operating a railroad it becomes necessary, at times, to make time between given points, and the running of a freight train at the rate of

40 miles an hour for this purpose is not in itself negligence. The law insists, however, that with increased speed must be associated a higher degree of care. Trains must be run with regularity, and with reference to the movements of other trains, in dry weather as well as in wet weather. Uninstructed, the jury were at liberty to find that, although the train may have been properly equipped, the high rate of speed was improper management of the train.

The defendant was entitled to the instructions asked for, and for this error the judgment must be reversed, and a new trial granted, with costs.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred. GRANT, J., concurred in the result.