## KUJAWSKI v COHEN

1. TRIAL—MOTIONS—DIRECTED VERDICT—EVIDENCE—JURY VERDICT.

A motion for a directed verdict was properly denied where there was any evidence which was competent and sufficient to support a jury determination when viewing the evidence most favorably to the party opposing the motion; the right to have a jury pass on questions of fact must be protected even when only scant evidence is presented.

2. TRIAL—NEGLIGENCE—THEORY OF ACCIDENT—JURY QUESTION.

The fact that a plaintiff's causal theory of an accident in a negligence case was not more probable than any of the defendant's explanations does not prevent the plaintiff from having her case considered by a jury; the question of whether a plaintiff's theory is the correct one or whether it was sufficiently rebutted is for the jury although the plaintiff's proofs depended on inference to establish the main fact.

3. TRIAL—EVIDENCE—RELEVANCE—DISCRETION OF COURT—APPEAL AND ERROR.

The relevance of evidence is to be determined by the trial judge and his discretion is to be affirmed unless an abuse of discretion is manifest.

4. EVIDENCE—AUTOMOBILES—ADMISSIBILITY—TRIAL—DISCRETION— ABUSE OF DISCRETION.

Evidence offered by a defendant manufacturer of the condition of the left front end of a truck, in a suit for wrongful death caused when the right front wheel of the truck flew off, was

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 349, 350, 356–366.

[2] 57 Am Jur 2d, Negligence § 185.

[3, 4] 29 Am Jur 2d, Evidence §§ 249, 251–257.

[5] 31 Am Jur 2d, Expert and Opinion Evidence § 26 *et seq.*

[6] 67 Am Jur 2d, Sales § 433.

[7] 22 Am Jur 2d, Damages §§ 108, 346, 349.

Duty to instruct, and effect of failure to instruct, jury as to reduction to present worth of damages for future loss on account of death or personal injuries. 154 ALR 796.

admissible to rebut the assertion that the truck was in safe running order, to rebut the assurance by a service station employee that he was a competent mechanic, and to show that the right front end had been negligently repaired, where both the left and the right front ends of the truck had been serviced at the same time by the service station; refusal to admit this evidence was a clear abuse of discretion.

5. WITNESSES—EXPERT WITNESSES—QUALIFICATION—DISCRETION OF COURT.

The qualification of an expert witness and the scope of his expert testimony are questions reserved for the discretion of the trial judge.

6. CONTRACTS—BREACH OF WARRANTY—DEFENSES—CONTRIBUTORY NEGLIGENCE—KNOWN DANGER—ASSUMPTION OF RISK.

Contributory negligence is not a defense to a breach of warranty action; something approaching assumption of risk or disregard of known danger must be shown to bar recovery.

7. NEGLIGENCE—WRONGFUL DEATH—DAMAGES—PRESENT WORTH—INTEREST—INSTRUCTIONS TO JURY.

Instructions on the present worth of future damages and interest should be given when charging the jury in a wrongful death case (SJI 34.03, 34.04).

Appeal from Wayne, Benjamin D. Burdick, J. Submitted Division 1 April 4, 1974, at Detroit. (Docket No. 15806.) Decided November 25, 1974. Leave to appeal applied for.

Complaint by Frances J. Kujawski, administratrix of the estate of Eugene J. Kujawski, deceased, against Erwin Cohen and General Motors Corporation for damages for wrongful death resulting from an automobile accident. Judgment for plaintiff. Defendant General Motors Corporation appeals. Reversed and remanded.

*Weinstein, Kroll & Gordon, P. C.,* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *William P. Cooney, Sarah Wildgen*

*Sweet,* and *John P. Jacobs) (Ross L. Malone,* General Counsel, *Thomas W. Watkins,* and *Judith A. Zakens,* of counsel), for General Motors Corporation.

Before: BASHARA, P. J., and BRONSON and CARLAND,* JJ.

BRONSON, J. Plaintiff-appellee's decedent, Eugene Kujawski, was killed when the right front wheel of the truck he was driving flew off, causing the truck to tip over. A wheel bearing failure was responsible for the accident. Appellee brought suit for wrongful death against Erwin Cohen, doing business as J & I Service Station, for negligent installation of the wheel bearing and against appellant General Motors Corporation (GM) for negligence and breach of warranty as to the wheel bearing manufactured by a GM subsidiary. A jury returned a verdict against GM for $315,000 and found no cause of action against Cohen. GM has appealed.

GM first complains that a directed verdict in its favor was erroneously denied. In considering this claim we are bound to view the evidence in the light most favorable to the non-movant. If, when so viewed, there is *any* evidence which was competent and sufficient to support the jury's determination, that determination must not be disturbed. *Wamser v N J Westra & Sons, Inc,* 9 Mich App 89; 155 NW2d 871 (1967); *Taft v J L Hudson Co,* 37 Mich App 692; 195 NW2d 296 (1972). See also, *Kieft v Barr,* 391 Mich 77; 214 NW2d 838 (1974). The right to have a jury pass on questions of fact must be protected even when only "scant" evidence is presented. *McKinch v Dixon,* 391 Mich

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

282; 215 NW2d 689 (1974). The proof offered by appellee satisfied this standard.

One theory of recovery sounded in warranty. Appellee alleged that GM breached its warranty by manufacturing a defective bearing. Her expert witness, Dr. Charles Arthur Nagler, testified that the bearing failure was due to a structural defect in the bearing assembly. After careful study of the remains of the subject bearing and comparison with a replacement bearing, he concluded that cracking could have occurred, which in turn could have caused the bearing failure.

GM's experts disputed these findings and suggested other causes of bearing failure: improper installation, improper adjustment, improper lubrication, and defects in adjacent moving parts. Indeed, Dr. Nagler admitted that such explanations of the failure were plausible. GM insists that the defective bearing theory propounded by Dr. Nagler and relied upon by appellee is mere conjecture within the rule of *Kaminski v Grand Trunk W R Co,* 347 Mich 417; 79 NW2d 899 (1956). GM maintains that appellee's theory is "simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference", *Kaminski, supra,* at 422, and on that ground argues that it deserves a directed verdict.

Dr. Nagler examined and tested both the remains of the damaged bearing and a replacement bearing. One portion of the bearing, called the "cage", was said by him to contain folds and creases which, together with the hardness of the steel of which it was made and the heat treatment to which it was subjected, made it susceptible to cracking. This cracking, according to Dr. Nagler, could cause the kind of bearing failure responsible for the injury complained of.

It is true that appellee never proved that the bearing installed on the truck was cracked. This is because the "cage" portion of the damaged bearing was never recovered. Appellee's failure to produce the "cage" is not fatal, especially in light of the fact that it apparently disintegrated in the accident. Compare *Schedlbauer v Chris-Craft Corp,* 381 Mich 217; 160 NW2d 889 (1968). Moreover, Dr. Nagler's investigations demonstrated that cracking was more than mere speculation; it was a distinct possibility. Appellee introduced evidence pointing to one theory of causation, "indicating a logical sequence of cause and effect". *Kaminski, supra* at 422. Appellee's proposed causal theory was not more probable than any of GM's explanations, but that fact alone does not prevent appellee from having her case considered by a jury.[1] As was said in *Schoepper v Hancock Chemical Co,* 113 Mich 582, 586, 589; 71 NW 1081, 1083–1084 (1897), quoted in *Schedlbauer, supra,* at 230–231:

"It is true that where an injury occurs that cannot be accounted for, and where the occasion of it rests wholly in conjecture, the case may fail for want of proof. *Robinson v Charles Wright & Co,* 94 Mich 283 [53 NW 938 (1892)]; *Redmond v Delta Lumber Co,* 96 Mich 545 [55 NW 1004 (1893)]. But such cases are rare, and that rule should never be so extended as to result in a failure of justice, or in denying an injured person a right of action where there is room for balancing the probabilities, and for drawing reasonable inferences better supported upon one side than the other. * * *

"Negligence, like any other fact, may be inferred from circumstances. *Alpern v Churchill,* 53 Mich 607, 613 [19 NW 549 (1884)]; *Barnowsky v Helson,* 89 Mich 523 [50 NW 989 (1891)]. And, though the proof of plaintiff depended upon inference to establish the main

[1] It was the "comparative improbability" of defendant's explanation in *Kaminski* which led the Supreme Court to deny defendant's motion for a directed verdict. *See Kaminski, supra,* at 427.

fact, the question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury. *Crosby v Detroit, G H & M R Co,* 58 Mich 458 [25 NW 463 (1885)]; *Hagan v Chicago, D & C G T J R Co,* 86 Mich 615 [49 NW 509 (1891)]; *Woods v Chicago & G T R Co,* 108 Mich 396 [66 NW 328 (1896)]."

A jury question was squarely presented and the motion for directed verdict properly denied.

General Motors' next assignment of error concerns the trial judge's exclusion of certain evidence. Counsel for GM attempted on several occasions, and in several different ways, to introduce evidence of the condition of the left side of the truck's front end. An extensive separate record, developed throughout the trial and preserved on appeal, has been thoroughly reviewed. We are convinced that the trial judge erred in refusing to allow the jury to consider evidence of the condition of the left side of the vehicle.

Defendant Cohen's employee, Wayman Marshall, testified that he disassembled the entire front end of the truck in order to repair it. After pulling the brake drums on both sides and exposing the spindles, spindle threads and bearings, he examined both sides, in an attempt to diagnose the problem. He found that the bearings on both sides had not been properly lubricated. He testified that he did not check the left spindle "very closely" but did not think it needed replacement. It was not replaced. Marshall concluded that the inner bearing on the left side did not need to be replaced. He repacked it instead. He then performed extensive repairs on the right side. Part of those repairs involved replacing the inner bearing which was in pieces and fell into his hands when he removed it. When finished, he reassembled both sides and was

convinced that the truck was, as his boss Mr. Cohen later testified, in "safe running order".

GM sought to show, by introducing parts of the left side, the probable condition of the disintegrated right side. Counsel for GM argued that since both sides were serviced at the same time and in similar fashion, the condition of the left front would be helpful in determining the condition of the right front. More particularly, GM suggested that just as the left spindle had been damaged prior to Marshall's working on it, the right spindle may similarly have been damaged. If so, such damage could have, GM alleged, been caused by the undisputed prior bearing failure and could have caused the replacement bearing to fail, resulting in Kujawski's fatal injuries.

GM also sought to use the evidence of the condition of the left side to buttress its claim that the right front had been improperly serviced. Cohen's own witness, testifying on rebuttal, indicated that the left spindle was in such a poor condition that it could not properly be used. Yet it was admitted that this spindle had not been replaced by Marshall and it was alleged by GM that the condition of the left spindle had not changed appreciably between the time of repair and the time of trial. It had not been damaged in the accident, either. GM argued that such evidence, given that both sides were serviced at the same time and by the same mechanic, provides an indication of the care with which the right side may have been treated.

The condition of the left side was also offered to rebut Cohen's assertion that the truck was in "safe running order" and to rebut Marshall's competence as a mechanic, in an effort to undermine the credibility of both witnesses.

We need not pass on the merit of the first theory

of admissibility—that of inferring condition in one place from evidence of condition in another place.[2] We must conclude that the trial judge abused his discretion in refusing to allow introduction of evidence of the condition of the left front for the two other limited purposes noted above. The trial judge rejected the evidence for either purpose, stating that the condition of the left front was irrelevant to the case, because only the right front had failed.

Citation of case law is not required to support the well-established proposition that the relevance of evidence is to be determined by the trial judge and that his discretion is to be affirmed unless an abuse of discretion is manifest.

In the instant case we are constrained to hold that there was a clear abuse of discretion. The trial judge would have been right in excluding the evidence had it been offered to show the cause of the right front failure; since the left side did *not* fail, its condition would have little tendency to show the cause of failure of the right side. However, the evidence was not offered for that purpose.

It was introduced to rebut Cohen's claim that the truck was in good running order and Marshall's assurance that he was a competent mechanic. In determining whether the truck was in good running order or whether Marshall was a competent mechanic, the condition of the left side —which had been serviced by Marshall at the same time as the right side—had to be considered. Unless the condition of the left side was disclosed, neither claim could be fairly weighed by the trier of fact, since the condition of *both* sides was relevant to a proper assessment of each claim.

---

[2] *See Snyder v City of Albion,* 113 Mich 275; 71 NW 475 (1897); *Savage v Peterson Distributing Co,* 379 Mich 197; 150 NW2d 804 (1967); 2 Wigmore, Evidence (3d ed), § 438(2)(c), p 419.

Moreover, the evidence was relevant to show the care exercised by Marshall in his effort to repair the truck. One of GM's major defenses was that the damage was a result of improper repair and installation of parts. GM offered to show that Marshall had negligently repaired the left side of the truck's front end. That evidence, if accepted by the jury, would have assisted them in determining whether Marshall exercised due care in repairing the right front. The evidence offered by GM at least suggests that the right side could have been treated in the same way as the left side.

Because the evidence excluded was pivotal to one of GM's defenses and would also have been important in assessing the credibility of adverse witnesses and the validity of their claims, GM is entitled to an opportunity to introduce such evidence at a new trial.

We are confident that other errors alleged to have occurred will be avoided on retrial. However, three items deserve mention here.

First, the parties vigorously disputed the qualifications of appellee's expert, Dr. Nagler, and the scope of his expert testimony. We recognize that such questions are reserved for the discretion of the trial judge. We do not think that the trial judge abused his discretion in qualifying Dr. Nagler as an expert witness. The real dispute on that score was whether Dr. Nagler was more qualified than the experts testifying for GM. That, however, was a question for the jury. But we do suggest that the appellee take the time necessary to fully apprise the trial court of Dr. Nagler's expertise in areas other than accident reconstruction. Once qualified, Dr. Nagler was allowed to testify on many subjects, some of which were arguably outside of the scope of the expertise established in the

voir dire. Allowing such a broad sweep to Dr. Nagler's testimony must be justified in the record on retrial.

Second, GM challenged certain jury instructions, arguing that the defenses of contributory negligence and "misuse or abuse of product" should have been allowed. Contributory negligence, as it is characteristically understood in the common law of negligence, is *not* a defense to a breach of warranty action. Something more than mere negligence must be shown to bar recovery, something approaching "assumption of the risk" or disregard of known danger. *Barefield v La Salle Coca-Cola Bottling Co,* 370 Mich 1, 5; 120 NW2d 786, 789 (1963); *Baker v Rosemurgy,* 4 Mich App 195, 200; 144 NW2d 660, 663 (1966). There was insufficient evidence in the record to justify an instruction on that type of contributory negligence, GCR 1963, 516.7. The same can be said for the trial judge's refusal to give the "misuse or abuse of product" instruction as requested by GM.

Finally, the trial judge failed to charge the jury on present worth of damages as required by SJI 34.03. No instruction on interest was given, either. An instruction on present worth must be given on retrial,[3] along with an instruction on interest (SJI 34.04), if properly requested. The parties may wish to adopt the suggestion in the note to SJI 34.03, waiving reciprocally these two instructions in order to avoid confusion.

Reversed and remanded for new trial. Costs to appellant.

All concurred.

---

[3] *Currie v Fiting,* 375 Mich 440, 453–454; 134 NW2d 611 (1965).