HOLLOWAY v GENERAL MOTORS CORPORATION

OPINION OF THE COURT

1. PRODUCTS LIABILITY—BURDEN OF PROOF—DEFECT OF MANUFACTURE
   —DAMAGE RESULTING FROM DEFECT—IMPLIED WARRANTY OF
   FITNESS—EVIDENCE—JURY QUESTION.

   A plaintiff in a products liability action must allege and prove the
   defect of manufacture upon which he relies and injury or
   damage caused by or resulting from such defect, only then may
   he recover against the manufacturer of the defective product;
   there must be more than an accident and an injury to consti-
   tute a jury question as to breach of implied warranty of fitness
   for the purpose intended.

2. PRODUCTS LIABILITY—EVIDENCE—INFERENCES—DEFECT—PROXIMATE
   CAUSE—PRIMA FACIE CASE—MOTIONS—DIRECTED VERDICT.

   Evidence in a products liability action of facts along with legiti-
   mate inferences to be drawn therefrom that a defect was
   present in a product at the time of purchase, which defect was
   a proximate cause of the plaintiff's injury, constitutes a prima
   facie case sufficient in law to prevail against a defendant's
   motion for a directed verdict.

3. PRODUCTS LIABILITY—EXPRESS WARRANTY—AUTOMOBILES—DIS-
   CLAIMER—IMPLIED WARRANTY OF FITNESS.

   An express warranty on a motor vehicle limited to repair or
   replacement of a warranted part is not the kind of disclaimer
   that in any sense purports to limit the manufacturer's liability
   under the implied warranty of fitness of that part.

DISSENT BY N. J. KAUFMAN, J.

4. PRODUCTS LIABILITY—EVIDENCE—BURDEN OF PROOF—CAUSAL CON-
   NECTION.

   *A plaintiff must prove a defect attributable to the manufacturer
   of a product and causal connection between that defect and*

REFERENCE FOR POINTS IN HEADNOTES
[1-9] 63 Am Jur 2d, Products Liability §§ 96, 98, 201.

*plaintiff's injury or damage in order to maintain a products liability claim.*

5. PRODUCTS LIABILITY—EVIDENCE—DIRECT PROOF—INFERENCES—MANUFACTURER—CAUSED DEFECT.

*A plaintiff may prove a products liability claim by the introduction of direct proof and through the inferences which the jury might draw from that proof; plaintiff is not limited to direct proof of a manufacturer-caused defect.*

6. NEGLIGENCE—EVIDENCE—INFERENCES—JURY QUESTION.

*Negligence, like any other fact, may be inferred from circumstances, and where plaintiff's proof depends upon an inference to establish the main fact of negligence the question of whether the inferences suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, is for the jury.*

7. NEGLIGENCE—BREACH OF WARRANTY—TRIER OF THE FACTS—EVIDENCE—INFERENCES.

*It is for the trier of the facts to accept or reject the evidence where competent, admissible evidence creates a reasonable inference of negligence or breach of implied warranty and it is not inherently incredible or completely discredited on cross-examination.*

8. PRODUCTS LIABILITY—MANUFACTURER-CAUSED DEFECT—EVIDENCE—INFERENCES—CONJECTURE—DIRECTED VERDICT.

*A directed verdict in favor of the defendant in a products liability action is proper where the plaintiff's theory of causation cannot be reasonably inferred from the evidence and is mere conjecture, but direct proof of a manufacturer-caused defect is rarely possible and a directed verdict is improper when evidence which supports a theory of causation which is more than conjecture has been presented.*

9. PRODUCTS LIABILITY—MANUFACTURER-CAUSED DEFECT—EVIDENCE—JURY QUESTION—DIRECTED VERDICT.

*It was for the jury to determine in a products liability case if a manufacturer-caused defect existed and, if so, whether that defect caused plaintiff's injury, where the right front ball-joint assembly on plaintiff's husband's car was found after an accident to have been badly cracked, police officers who investigated the accident testified that tire marks indicated that the right front tire had separated from the automobile frame causing the car to veer sharply and careen off the road, the tread on the right front tire was worn away, and plaintiff's expert witness testified that the ball-joint assembly had broken*

*and caused the accident; enough credible evidence existed for the jury to infer such a defect, and a directed verdict for defendant was improper.*

Appeal from Eaton, Richard Robinson, J. Submitted Division 3 January 14, 1975, at Grand Rapids. (Docket No. 19334.) Decided April 8, 1975. Leave to appeal granted, 394 Mich 824.

Complaint by Brenda Holloway, by her next friend Sharon H. Holloway, and Sharon H. Holloway, as administratrix of the estate of Ernest T. Holloway, deceased, against General Motors Corporation, Chevrolet Division, Eaton County, and Eaton County Road Commission for damages suffered when an automobile left a highway and struck a telephone pole. Judgment for defendants. Plaintiffs appeal the judgment for General Motors Corporation. Affirmed.

*Abood, Abood & Abood, P. C.,* for plaintiffs.

*Cholette, Perkins & Buchanan* (by *Grant J. Gruel* and *Kenneth L. Block)* for defendant General Motors Corporation.

Before: ALLEN, P. J., and N. J. KAUFMAN and O'HARA,* JJ.

O'HARA, J. Plaintiffs appeal of right from a directed verdict. It was entered at the conclusion of all the proofs offered. The trial judge allowed the case to go to the jury as to co-defendant Eaton County. A verdict of no cause of action was returned. No appeal was taken. The case stands as between plaintiffs and General Motors Corporation.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

In a sense this is jurisprudential old hat. Decisions based upon an implied warranty of fitness of a product for the purpose for which it was manufactured fairly abound.

We could take the narrow approach and add one more opinion to the skyscraper-high pile that merely says that in our view there was or there was not enough evidence to make jury-submissible the question of the breach pleaded and argued, which in turn would permit the jury to make reasonable inferences from established facts and decide the questions of breach, proximate causality and damages, if any.

The counsel in this case have earned the right to more. The comprehensiveness and excellence of their briefs, the forceful and analytically disciplined oral argument, and the precise unequivocal answers to very precise, extensive bench questioning impel us to try, at least, to hone and refine the issue by re-reference to key cases in the products liability field. This to the end that in the event of review of our decision by the Supreme Court, we will at least have pinpointed the question which we believe controls.

First, we will record certain material facts which are uncontroverted.

At some point in time someone bought a new, unused 1967 Chevrolet. That someone sold it to someone else. That second someone sold it to plaintiff administratrix's decedent.

In May of 1971 decedent was operating the vehicle on a secondary road in Eaton County.

Now the facts become controverted. There was testimony that the road in question was pockmarked with chuck holes of various depths and dimensions. There is other testimony that it was not any worse or any better than most similar

roads. One witness testified he observed evidence of recent grading.

The speed of the vehicle at the time of the accident was placed at between 50 and 55 miles per hour. This fact is not seriously challenged.

For some reason or another, while so being driven, the right front ball-joint assembly broke. The car left the highway, crashed into a telephone pole, killing the driver and injuring his minor daughter.

Whether the assembly broke *on* the highway causing the car to leave the road, or broke after the car left the highway and hit the pole is vigorously contested.

Now comes, however, the argument-stressed position of the defendant. Whether it broke on the highway before the crash or after it left the highway and hit the pole is not the real question. For, says defendant, in either event plaintiffs failed to introduce *any* evidence of defective design, defective or unsuitable material, or any other specific act or omission in the manufacture of the vehicle which existed at the time it left *its* control and was placed upon the open market.

Two experts testified after due qualification; one a physicist with experience in accident reconstruction, the other a metallurgist. Each deserves commendation for his candor and admission of testimonial limitations.

Plaintiffs' expert testified in substance that in his opinion the assembly broke while the vehicle was on Nixon Road, and was caused by the rough and bumpy condition of the road. He conceded that he could express no opinion on "metal fatigue" ( *i.e.,* defective material), but stated one did not have to be a metallurgist to state with confi-

dence that the assembly broke on the road and likely due to the road conditions.

Defendant's expert testified he could find no evidence of "wear out" or metal fatigue. It was his opinion that the break did not occur while the vehicle was on the road. He, with like candor displayed by plaintiffs' expert, testified he knew nothing about skid marks, tire marks or chuck holes.

So here we are with two experts expressing antithetical opinions, and a raft of lay and police witnesses testifying in sharp disagreement about road conditions, skid marks and the like.

Where is all this conflict to be resolved except in the jury room, ask plaintiffs.

Right where it was, answers defendant, on the bench, by the judge, because no one of the initial prerequisites of a jury-submissible case on defect of design, material, or any other act or omission was ever adduced by plaintiffs. Without that cornerstone, no jury could do anything but speculate, and this is impermissible under the law.

Hold on, say plaintiffs. Michigan's implied warranty law is not that strangulating. While we continue to protest that we don't have *res ipsa loquitur* by that name, we, in effect, apply it under the doctrine of permissible inference from established facts. In this case there are enough such facts to go to the jury on defect and causality.

We know not what to do but to go to the landmark cases, reexamine them, do our best to construe them and leave the rest to our Supreme Court if it chooses to act.

We begin with *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965).

In that case defense counsel thus bluntly summarized the proposition in his brief:

" 'If we start from what appellees considered the incorrect assumption that all injured persons are entitled to recover from a manufacturer who puts the product in the market, merely because of the injury, then this ends the matter and the court can, and should, say so, in one crystal-clear paragraph, unencumbered with sophistries or other unnecessary explanations.' " 375 Mich at 91–92.

Former Justice BLACK, speaking for the majority, just as bluntly replied:

"A more accurate statement of 'the proposition' is that something more than injury must be shown in instances such as this plaintiff has pleaded, that is to say, he must allege and prove (a) the defect of manufacture upon which he relies, and (b) injury or damage caused by or resulting from such defect." 375 Mich at 96.

Further in the opinion he added:

"Some quibbler may allege that this is liability without fault. It is not. As made clear above, a plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product." 375 Mich at 98–99.

This was the state of the law until *Bronson v J L Hudson Co,* 376 Mich 98; 135 NW2d 388 (1965), came along. A new test was announced clearly incompatible with *Piercefield, supra.* We quote:

"In the instant case, there was no competent direct proof of what specific irritant, if any, was present in the slip cloth. Upon favorable view, did the facts, along with legitimate inferences to be drawn therefrom, constitute a prima facie case sufficient in law to prevail

against defendant's motion for directed verdict? More specifically, was there evidence from which it might be legitimately inferred that an irritant was present in the cloth at time of purchase, which irritant was a proximate cause of injury?

"We are aware that in the typical products-liability case, plaintiff's counsel is usually able to produce some direct proof of defect and causal relationship between that proof and injury. Here, the trial court found no competent direct evidence and, without detailing what was presented, we agree. However, we are moved to disagree with the trial court's direction of verdict at the close of plaintiffs' proofs. We cannot say that reasonable minds could not differ as to what might be legitimately inferred therefrom, so that we find it error to have concluded, as a matter of law, that plaintiff did not establish a prima facie case. Our opinion is that under the circumstances, upon favorable view, a legitimate inference from plaintiffs' proofs was that an irritant was present in the cloth, which irritant caused Mrs. Berke's injury." 376 Mich at 101–102.

Either we have to resign ourselves to an ad hoc disposition, case by case, or choose between what appear to be two mutually exclusive rules of law.

It was suggested on oral argument that we might find some "middle ground" allowing for age of the product and other variables. We doubt our authority to promulgate a new test. We are oath-obligated to work within Supreme Court authority as best we can. When two lines of authority exist we believe it is our duty to choose and explain our choice.

We elect to follow *Piercefield* because we think it is a rule fair to the purchaser and fair to the manufacturer. We think there must be more than accident and injury to constitute a jury-submissible question of breach of implied warranty of fitness for the purpose intended.

Search as we will, and we did, the record does

not contain any testimony of defective design, defective material, improper assembly—nothing.

A car left the road. A man was regrettably killed and a child injured. A piece of machinery was found broken. No one qualified to say so testimonially claimed it was too weak, too long, too short, or too anything. Neither did anyone say it was not designed correctly, the metal too light or that it was *not* too anything. Under the circumstances we feel obligated to affirm the trial judge.

If the case goes on to further review we should pass on one additional issue to avoid a needless remand. There was an express warranty on the vehicle that had not yet expired (50,000 miles; the car had been driven some 47,000).

The warranty was limited to repair or replacement of the warranted part. This is not the kind of disclaimer that in any sense purports to limit the manufacturer's liability under the implied warranty.

The order directing a verdict is affirmed. Costs to the appellee.

ALLEN, P. J., concurred.

N. J. KAUFMAN, J. *(dissenting)*. Having analyzed the evidence presented at trial in the context of what I perceive to be the appropriate precedent, I am constrained to dissent. My principle disagreement with the majority relates to its use of *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965), as the appropriate standard for review. The majority quotes portions of Supreme Court opinions in *Piercefield* and *Bronson v J L Hudson Co,* 376 Mich 98; 135 NW2d 388 (1965), and characterizes them as "two mutually exclusive rules of law". I do not believe that *Piercefield* and *Bronson* conflict. *Piercefield* was the seminal case

in this jurisdiction in this area. It detailed *what* a future plaintiff would have to prove to maintain a products liability claim, namely, "a defect attributable to the manufacturer and causal connection between that defect and the injury or damage * * * ". 375 Mich at 98–99. Bronson expanded on *Piercefield* by explaining *how* a plaintiff could prove the claim, by the introduction of direct proof and through the inferences which the jury might draw from that proof.

In applying what they term the *"Piercefield* test", the majority has, in effect, ruled that plaintiff was limited to proving her case by direct proof of a manufacturer-caused defect, and could not use circumstantial evidence and inferences from direct proofs to do so. This is not the law in Michigan. As the Supreme Court, reaffirming *Schoepper v Hancock Chemical Co,* 113 Mich 582; 71 NW 1081 (1897), stated in the more recent and relevant case of *Schedlbauer v Chris-Craft Corporation,* 381 Mich 217, 230; 160 NW2d 889, 896 (1968):

" 'Negligence, like any other fact, may be inferred from circumstances. * * * And, though the proof of plaintiff depended upon inference to establish the main fact, the question of whether the inference suggested by the plaintiff's theory is the correct one, or whether it was sufficiently rebutted, was for the jury.' " (Citations omitted.)

See also *Snider v Thibodeau Ford, Inc,* 42 Mich App 708, 713; 202 NW2d 727, 730 (1972), *lv den,* 388 Mich 812 (1972), *Hanson v Teledyne Industries, Inc,* 56 Mich App 271; 224 NW2d 59 (1974).[1]

---

[1] "Where competent, admissible evidence not inherently incredible nor completely discredited on cross-examination creates a reasonable inference of negligence or breach of implied warranty, it is for the trier of the facts to accept or reject it." (Citation omitted.) *Hanson v Teledyne Industries, Inc,* 56 Mich App 271, 273–274; 224 NW2d 59, 60 (1974).

It should be clear from an examination of the developing precedent in this area that direct proof is rarely possible. Plaintiff and her husband were not there when the car was manufactured. Even when only "scant" evidence has been presented, the Supreme Court has held a directed verdict to be improper, *McKinch v Dixon,* 391 Mich 282; 215 NW2d 689 (1974). Of course, where a plaintiff's theory of causation is mere "conjecture", where it cannot be reasonably inferred from the evidence, a directed verdict is proper. *Kaminski v Grand Trunk W R Co,* 347 Mich 417; 79 NW2d 899 (1956). In *Meli v General Motors Corp,* 37 Mich App 514; 195 NW2d 85 (1972), the plaintiff demonstrated only that the accelerator in his car had become stuck to the floor when the accelerator spring became disconnected. This Court upheld a directed verdict for the defendant because plaintiff had shown no defect nor introduced evidence from which the jury could have reasonably inferred that a defect existed and caused the accident.

The theory advanced by plaintiff at trial in the instant case was surely more than conjecture. It was undisputed that the right front ball-joint assembly on plaintiff's husband's car was found after the accident to have been badly cracked in three places, allowing the wheel to turn independently of steering-wheel control. The police officers who investigated the accident testified that the tire marks left by the car indicated that the right front tire had separated from the frame causing the car to veer sharply and careen off the road. The tread on the right front tire was shown to have been worn away. Plaintiff's expert witness testified that the ball-joint assembly had broken and caused the accident. As plaintiff's attorney stated in his opening argument and stressed continuously during the

trial, plaintiff's theory was that the ball-joint assembly had snapped because of a defect in its manufacture. This defect, plaintiff contended, was in violation of defendant's implied warranty of fitness.

Defendant claimed that the ball-joint assembly had not broken before the accident but cracked when the car hit a tree. Defendant did not even claim that the assembly had worn away through normal use.

From these facts, I conclude that a factual dispute existed. It was for the jury to determine if a defect existed and, if it did, whether it caused the injury. Enough credible evidence existed from which the jury could reasonably have inferred the existence of such a defect. This Court has found such a factual dispute in two nearly identical cases.

In *Pohlod v General Motors Corp,* 40 Mich App 583, 588; 199 NW2d 277, 280 (1972), the Court stated that:

"The record reveals that the plaintiffs' vehicle veered to the left and flipped over. There was testimony from which it could be inferred that the left front ball joint on the vehicle was defective in design, manufacture, or assembly. Further testimony indicated that failure of this part could have been the cause of the accident. Under these facts and circumstances, a *prima facie* case was established which required the jury to determine the question of negligence of the defendant. The trial court's submission of this question to the jury was not clearly erroneous."

In the recent case of *Kujawski v Cohen,* 56 Mich App 533; 224 NW2d 908 (1974), plaintiff alleged that a defective wheel bearing caused the right front wheel of decedent's truck to fly off and the

truck to tip over. Unlike the instant case, the defendant propounded several causes other than a defect to explain the accident. Unlike the instant case, the allegedly defective part could not be produced since it had disintegrated in the accident. Nonetheless, this Court found that enough evidence had been presented to comprise a prima facie case.[2]

Having applied what I feel to be a standard more appropriate than that used by the majority, I have examined the evidence and have compared this case to the other consistent holdings of this Court. Having done so, I must vote to reverse and remand this case.

---

[2] In the *Schedlbauer* case, also, the defendant propounded numerous other theories and the allegedly defective part was never retrieved, although plaintiffs had ample opportunity to do so. The Supreme Court held that a directed verdict for defendant was improper.