HASTINGS MUTUAL INSURANCE COMPANY v CROYDON
HOMES CORPORATION

1. PRODUCTS LIABILITY—MOTIONS—DIRECTED VERDICT—LIABILITY.

A motion for a directed verdict in favor of a defendant in a
product liability case should be denied where, taking the evi-
dence in a view favorable to the plaintiff, a prima facie case of
liability is established; a directed verdict for a defendant should
be granted only where all reasonable men would agree to facts
which preclude liability.

2. PRODUCTS LIABILITY—DEFECTS—CIRCUMSTANTIAL EVIDENCE—LACK
OF SPECIFIC DEFECT.

A product, in a product liability case, may be found defective
from circumstantial evidence without a specific showing of a
demonstrable defect.

3. PRODUCTS LIABILITY—INFERENCES—DEFECTS—JURY QUESTION.

An inference that there was a defect in a furnace is permitted in
a product liability case where there was sufficient evidence
presented for an inference to arise that the furnace was the
cause of a fire; whether there was in fact a defect in the
furnace is a question to be submitted to the jury, which may
consider the question even though there is no evidence of a
specific defect in a specified part of the furnace.

4. PRODUCTS LIABILITY—INFERENCES—JURY QUESTION—LACK OF SPE-
CIFIC DEFECT—REPLACEMENT PARTS.

It is for a jury, under an appropriate instruction, to decide which
inferences should arise from the evidence in a cause of action
based on a fire which allegedly resulted from a defective
furnace where no specific defect was found and where a new oil
line and nozzle had been installed two days prior to the fire by
a party other than the party who sold the furnace originally.

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial § 489.
[2] 29 Am Jur 2d, Evidence §§ 264, 265.
    30 Am Jur 2d, Evidence § 1091.
[3, 4] 75 Am Jur 2d, Trial § 353.

Appeal from Kent, John T. Letts, J. Submitted December 9, 1976, at Grand Rapids. (Docket No. 24432.) Decided March 1, 1977.

Complaint by Hastings Mutual Insurance Company, as subrogee of Sam and Olive Finkbeiner and James and Linda Alma, against Croydon Homes Corporation and Gray Mobile Homes, Inc., for recovery of proceeds paid in a fire loss, claiming breach of express and implied warranties. Third-party complaint by defendant Gray against Jerry Steelman for indemnification, and cross-claim by Gray against defendant Croydon for breach of implied warranty. Third-party complaint by defendant Croydon against Lear Siegler, Inc., for breach of implied warranty. Judgment for all defendants on a directed verdict. Plaintiff appeals. Reversed and remanded.

*Smith, Haughey, Rice & Roegge* (by *Laurence D. Smith* and *Lance R. Mather*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Robert A. Benson*), for Croydon Homes Corporation.

*Rhoades, McKee & Boer* (by *Timothy Hillegonds*), for Gray Mobile Homes.

*Hillman, Baxter & Hammond* (by *Joel E. Krissoff*), for Jerry Steelman.

*Varnum, Riddering, Wierengo & Christenson* (by *Thomas J. Mulder* and *Jeffrey L. Schad*), for Lear Siegler, Inc.

Before: R. B. Burns, P. J., and Quinn and Beasley, JJ.

Beasley, J. On May 31, 1972, the subrogors of

plaintiff, Hastings Mutual Insurance Company, bought a mobile home manufactured by defendant, Croydon Homes Corporation, and sold by defendant, Gray Mobile Homes, Inc.

Residing in the mobile home plaintiff's subrogors had some difficulties with the pilot light on the oil furnace going out. On December 4, 1972, after plaintiff's subrogors smelled oil, third party defendant, Jerry Steelman, was sent by defendant Gray to make a service call. Steelman, a college graduate specializing in heating, refrigeration and air-conditioning, testified that after careful inspection, he cleaned up a pool of oil on the floor around the unit and then installed both a new nozzle on the furnace and a new copper line to the oil tank. Checking the furnace, the oil line and the tank for the presence of oil, he concluded that the unit was safe and in operating order.

Two days later the trailer burned. The evidence indicated the fire started immediately in front of the furnace.

Plaintiff Hastings paid its insured for their fire loss and, as subrogee, commenced this case against defendant Croydon, the manufacturer of the mobile home, and defendant Gray, the seller, claiming breach of an express warranty for one year and of an implied warranty that the mobile home was safe for human occupancy and fit for the purpose intended.[1]

Defendant Gray brought in defendant Steelman as a third party defendant on an indemnification theory claiming if it was liable he was negligent in failing to correct any heating problems. Defendant Gray also cross-claimed against defendant Croydon on an implied warranty theory.

---

[1] In its complaint, plaintiff included a count in negligence which claim was voluntarily dismissed during trial.

Defendant Croydon brought in defendant Lear Siegler, Inc., the manufacturer of the furnace, as a third party defendant on an implied warranty theory.

The case was tried on the merits and after all the proofs were in, the trial judge granted a motion for a directed verdict for all defendants, saying no defect was proved. Plaintiff appeals from that directed verdict.

The standard of appellate review in measuring the granting of directed verdicts for defendants in product liability cases is whether, taking the evidence in a favorable-to-plaintiff view, a prima facie case of liability is established. If so, a motion for directed verdict should be denied. Only when all reasonable men would agree to facts which preclude liability should a directed verdict be granted for defendant. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975); *Ingram v Henry,* 373 Mich 453, 455; 129 NW2d 879 (1964). The reason for the rule is that it is the province of the jury to find the facts. If any fact is in dispute, the jury must determine the facts. *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99, 117 (1868). In product liability cases, a product may be found defective from circumstantial evidence without a specific showing of a demonstrable defect. *Garmo v General Motors Corp,* 45 Mich App 703; 207 NW2d 146 (1973).

In *Snider v Bob Thibodeau Ford, Inc,*[2] which was a brake failure case, the Court said a product is defectively designed if not reasonably safe for the purpose intended. The evidence necessary to prove defective design may be circumstantial, that is, the defect may be inferred by the behavior of the product. See also *Piper v Tensor Corp,* 71 Mich

---

[2] 42 Mich App 708; 202 NW2d 727 (1972).

App 658; 248 NW2d 659 (1976). In this case, defendant Gray impliedly warranted that the mobile home was of merchantable quality and fit for the purpose intended, namely, human occupancy. In addition, defendant Gray gave a one (1) year express warranty.

Viewed in the light most favorable to plaintiff, the evidence, including inferences therefrom, indicates purchase of a new mobile home including an oil furnace, a problem with the furnace manifested by a strong odor of oil, a service call during the warranty period by a service man selected by defendant Gray, installation by the service man of a new nozzle assembly and a new copper line from the furnace to the oil tank, assurance by the service man that the furnace was repaired and safe, and an unexplained fire two days later which started immediately in front of the furnace and which destroyed the evidence from which the cause of the fire might have been ascertained. In addition, the service man mopped up oil which he theorized came from air bubbles in the oil line. The evidence also indicates that the oil tank and the oil line were not furnished by defendant Gray, but were used by defendant Gray in hooking up the furnace in the mobile home. The evidence indicates the oil line was there when the mobile home was delivered.

From these facts plaintiff urges that an inference arises that the oil furnace in the mobile home may have been defective and that the defect may have caused the fire and damage. The record indicates that Stuart Long, an experienced, qualified expert, testified on behalf of plaintiff that the various component parts of the furnace, including the thermostats, had so disintegrated due to heat as to be completely untestable. Asked what he

could determine from the two switches that were given him to test with respect to the specific cause of the fire, he testified, "Nothing". He said that the burner tube and the burner nozzle which lets the oil spray into the combustion chamber were too damaged to test, but that the pump had 12″ of copper pipe located on top of the pump when given to him that apparently came from the fuel oil tank. He said that he could not pinpoint a specific cause of the fire. As a result, he was largely precluded from testifying with respect to his experiences with other similarly manufactured furnaces. However, when testifying on a separate record, he stated that in his opinion, the furnace was the cause of the fire, but that he could not say specifically what in the furnace caused the fire. He posed other possibilities and negatived them saying that there was nothing to indicate any heat source possible other than the furnace. Since testimony that the furnace was the cause of the fire appears to be admissible expert testimony, we will, for appeal purposes, treat it as part of the record. He said that it was *not* his opinion that there was a leak in the oil line to the furnace. Based on the deposition of the service man that he had been permitted to read (his testimony occurred before that of the defendant service man), he ruled out any leak in the oil line except at the fitting where the new oil line was connected to the pump. He said that the burn pattern indicated the point of origin was in the immediate vicinity of the furnace and that the extent of damage done to the burner controls indicated a fuel fed fire. But, he further said that there was not any direct proof to substantiate these theories. Then taking this testimony in the light most favorable to plaintiff, may it be inferred that there was a defect in the furnace which caused the fire and damage?

Apparently it is plaintiff's theory, although never asserted in so many words, that the furnace was defective in some way and that the defect caused the fire which destroyed the mobile home. Plaintiff says that the fact of the fire is circumstantial evidence from which it is a reasonable inference that the furnace was defective. Plaintiff further says that this was sufficient evidence under *Bronson v J L Hudson Co*[3] to switch the burden of proof to defendant to establish the proximate cause of the fire, if indeed it was not caused by a defective furnace. The difficulty with this analysis is that it runs counter to the evidence; plaintiff's experts testified to the contrary. They said they could find no defect in the furnace. They also said they could not even guess as to the specific cause of the fire.

The service man theorized that the oil odor was caused by leaking oil and that the leak was caused either by dirt in the nozzle or a hole in the oil line. But although he installed both a new nozzle assembly and a new copper oil line, he hazarded no opinion as to the cause of the fire which occurred subsequent to installation of the new nozzle and new oil line. On sale of the mobile home, the implied warranty given by defendant Gray could be said to extend to the nozzle. The new replacement nozzle is traceable to defendant Gray since it was installed by a service man hired by defendant Gray in answer to a warranty claim. However, the oil line is not traceable to nor the responsibility of defendant Gray since it was there when plaintiff bought the mobile home from defendant Gray. It could be argued that defendant Gray was negligent in hooking up the furnace to a defective oil line or in failing to warn plaintiff of the danger,

---

[3] 376 Mich 98, 102–103; 135 NW2d 388 (1965).

but these arguments fall because they were not pleaded. In fact, plaintiff voluntarily dismissed his negligence count and, anyway, his negligence count did not specify this type of negligence.

The trial judge concluded that there was no evidence of a defect in the furnace, that, therefore, there was no issue of fact for a jury to determine and the motion for directed verdict for defendants should be granted.

Before undertaking to apply the law to these facts, we take note that in the product liability field the law continues to evolve and there is not complete accord with what the law is. See the 2-1 decision of this Court in *Holloway v General Motors Corp*, 60 Mich App 208; 230 NW2d 380 (1975), which case is before the Supreme Court on leave granted.

*Caldwell v Fox, supra,* and *Kupkowski v Avis Ford, Inc*, 395 Mich 155; 235 NW2d 324 (1975), both decided after this Court decided *Holloway,* undertake to refine the issue. In *Caldwell* the Court held:

"On the facts of this case, we believe that a jury could have reasonably inferred the existence of a defective condition in the brake system which was a cause of the accident. The testimony of Patrick Fox was evidence of a malfunction in the brake system. It is within the province of the jury to infer the existence of a defective condition from circumstantial evidence alone; there is no requirement that the actual defect need be proven. *Snider v Bob Thibodeau Ford, Inc*, 42 Mich App 708; 202 NW2d 727 (1972). Additionally, from the admissions attributable to third-party defendant Wilsie-Kelly, the jury could have found the existence of a defective master cylinder and an inoperative brake line which combined to cause some loss in braking power. Certainly these facts were contradicted by other evi-

dence, but it was for the jury to weigh the evidence and resolve these contradictions.

Likewise, from the original defendants' proofs, we believe a jury could have reasonably inferred that a defective condition existed in the brake system of the car from the time of its assembly. The Foxes had purchased the car only five weeks before the accident and there was no evidence that the brake system had been tampered with prior to the accident. This evidence is sufficient for a jury to infer reasonably that the brakes were defective from the time they left the manufacturer." 394 Mich at 410–411.

The Court went on to say that under these circumstances it was error to direct a verdict; that there was evidence over which reasonable minds could differ on each element of the product liability issue.

In *Kupkowski* the Court, with the same justice again writing for a unanimous Court, stated as follows:

"In the instant case, no testimony, expert or otherwise, was offered to show the nature of the defect which might have caused the brake failure. * * * Plaintiff fails to indicate why, if a defect did exist, he was unable to present proof that such a defect existed. Our examination of the circumstantial evidence permits no reasonable inference of defective design, material or assembly. We decline to extend recovery in cases involving products where the proofs submitted do not present a reasonable inference that a defective condition existed at the time the product left the possession of the manufacturer or seller. * * *

Our ruling today is consistent with prior decisions from this Court which have held that a product can be proved defective by drawing reasonable inferences from circumstantial evidence without specifically proving the existence of a demonstrable defect." 395 Mich at 165–166.

The facts in *Kupkowski* indicate that in December, 1968, plaintiff purchased a 1965 model used car from defendant dealer and drove it approximately 60 miles a day for five weeks before the alleged brake failure occurred.

The fact that, in the instant case, the fire disintegrated and made untestable the parts of the furnace that might otherwise have furnished a clue as to the specific part that failed, is the reason plaintiff was unable to offer proof of the defect. For these reasons we believe *Kupkowski* does not control and may be distinguished from this case.

Our task is to apply the law of these cited cases to the facts of this case. We believe there is sufficient evidence here for an inference to arise that the fire was caused by the furnace. We consider the law of the cited cases then to permit an inference that there was a defect in the furnace.

Plaintiff's expert testified that he could not find a defect in the furnace from the physical evidence furnished him that was testable. While this expert testimony may go to the credibility of the inference, there remains a fact question for the jury, namely, was there a defect in the furnace when the mobile home in which the furnace was located was delivered to plaintiff.

The fact that there is no evidence of a *specific* defect in a *specified* part of the furnace does not preclude submitting the issue to the jury. We are here more dealing with allocating responsibility for damage arising from a defective product than conducting a scientific seminar as to why the product failed.

However, an additional problem remains, in that there is a possibly permissible inference that the fire arose from a defect in the oil line or oil tank which were not originally furnished by defendant

Gray. This matter is complicated by the fact that third party defendant Steelman furnished and installed the new oil line and new nozzle. Since Steelman was employed by defendant Gray, it would seem that there was sufficient evidence for a jury to conclude that on an agency basis defendant Gray was responsible for any material or services furnished by its agent Steelman to the extent that they were furnished or installed as a result of the warranty arising out of the sale by defendant Gray. This issue is, perhaps, further complicated by the fact that defendant Gray neither furnished the original oil line nor was responsible for replacing the oil line.

Under these facts we do not apply the rule of conjectural choice between equally plausible inferences so as to remove this case from jury consideration. *Kaminski v Grand Trunk Western R Co,* 347 Mich 417; 79 NW2d 899 (1956). Rather, we believe the question of which inferences ought to arise from this evidence is for the jury under an appropriate instruction the same as for any other fact determination.

Consequently, we find that it was error to direct a verdict for defendants.

Since we find there are issues of fact which must be decided by the jury, our ruling grants a new trial on the merits for plaintiff against both defendant Gray and defendant Croydon. We set aside any ruling in favor of the third party defendants and, on re-trial, the third party claim by defendant Gray against third party defendant Steelman and by defendant Croydon against third party defendant Lear Siegler may be asserted. Similarly, our intention is to permit defendant Gray to proceed on its cross-claim against defendant Croydon.

Reversed and remanded for new trial consistent with this opinion. Costs to appellant.